[No. 28008.   Department One.   October 11, 1941.]

J. Z. GOODWIN, *Respondent,* v. H. B. GILLINGHAM *et al.,*
*Appellants.*[1]

[1]Reported in 117 P. (2d) 959.

*Burton J. Onstine* and *A. W. Dolphin,* for appellants.

*H. E. T. Herman* and *Cornelius E. Collier,* for respondent.

Robinson, C. J.— In this cause, we are met at the outset by a motion, set forth in respondent's brief, to strike the statement of facts upon the ground that there are not included therein "the complete record and all the proceedings and evidence in the cause." It is said that it nowhere purports to show the examination of the jury, or the addresses to the jury, or the opening statements of counsel, and it clearly appears that it does not. The trial judge, however, has certified that it contains all the material facts, matters, and proceedings occurring in the cause, not already a part of the record therein, and all of the evidence, oral and written. Furthermore,—and this, we think, should dispose of the matter—the trial judge certifies:

"That no amendments were proposed to said Statement of Facts except such as are embodied therein."

The motion is denied.

This is an action at law in which damages are sought for the alleged breach of an oral contract to make,

execute, and deliver a written lease, demising an apartment house for a term of three years.

The complaint alleges, in substance, that, on November 9, 1938, for and in consideration of $200 as rental for the period of one month, the defendants orally agreed to prepare, execute, and deliver a written lease of the premises, covering a period of three years from November 9, 1938, for an agreed rental of $200 per month during the first year, $210 per month during the second year, and $215 per month during the third year.

It is further alleged that it was "understood" by the defendants that, because of their promise to make the lease, the plaintiff would immediately proceed to purchase the furnishings of the apartment, which furnishings were owned by the then tenant, and pay certain taxes due thereon; that plaintiff did purchase the furnishings, upon a forfeitable installment contract, for an agreed sum of approximately five thousand dollars, making a down payment of $2,437.25, and entered into possession of the premises, and, while remaining in possession, paid rental on December 9, 1938, in the sum of $200, and a like amount on January 9, 1939.

It is further alleged that the defendants did not execute and deliver the written lease, but, on the contrary, early in January, 1939, sold the premises to Edith E. Stone, and upon the plaintiff's tender of the February rent, refused the tender for that reason; that plaintiff then tendered $200 to Mrs. Stone, on condition that she would carry out the alleged promises of the Gillinghams, which she not only refused to do, but served plaintiff with a notice to quit or pay rent.

It is further pleaded that, because of the defendants' alleged breach, plaintiff was compelled to abandon the premises and forfeit his contract to purchase the

furnishings and equipment, to his damage in the following amounts: $2,437.25, down payment on the furnishings contract; $160, subsequently paid in installments thereon; and $68.83, interest paid on deferred installments. Plaintiff further alleges that he spent $58 for labor and material in improving the apartments, and that he was damaged in the further sum of $4,422, which, he pleads, "represents the profits lost to plaintiff" which he would not have lost "had defendants not breached their aforesaid promise, agreement and contract."

It will be noted that the complaint does not purport to seek relief on the ground of fraud, or in any way invoke the exercise of the equitable powers of the court. It purports to be a straight action at law to recover damages for breach of contract.

The pleadings of the defendants raised a number of issues of fact, and the plaintiff demanded a jury trial. After a jury had been impaneled and before any evidence was taken, the defendants moved that the plaintiff be nonsuited and the action be dismissed with prejudice, on the ground that the complaint did not state sufficient facts to constitute a cause of action against the defendants, or either of them, since the action was upon an oral contract, void under the laws of the state of Washington, and especially under Rem. Rev. Stat., §§ 10550, 10551, and 10618 [P. C. §§ 1908-21, 1908-22, 3553]. The motion was denied.

When the plaintiff rested, the defendants challenged the sufficiency of the evidence on the same grounds, and upon the additional ground that Rem. Rev. Stat., § 6893 [P. C. § 1434], requires all conveyances of community real property be executed by deed of the husband and wife; defendants contending that no evidence had been introduced that the defendant wife had consented to, or ratified, the alleged oral agreement. This motion was denied.

At the close of all the evidence, the defendants challenged its sufficiency to warrant a verdict in plaintiff's favor. This challenge was denied, and the case sent to the jury, which returned a verdict in favor of plaintiff and against the defendants in the sum of $2,655.25. Motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were seasonably made by the defendants. These motions were denied, and judgment entered upon the verdict.

Appellants assign error with respect to the refusal of the court to give certain requested instructions, and upon the rulings made upon their various motions and challenges hereinbefore mentioned, including the post trial motions.

We approach the problems presented by the appeal by quoting the opening words of the respondent's brief:

"Respondent does not concede that the questions involved are those set forth on pages 3 to 5, inclusive, of appellants' opening brief. The questions involved are:

"1. Was the evidence which was admitted at the trial without objection sufficient to justify the trial judge in submitting to the jury the question whether there existed sufficient conduct on the part of appellants (defendants) and ample consideration moving to them for removing the oral lease for a term of more than one year from the ban of the statute?"

█ If, in fact, the trial judge did submit that question to the jury, ". . . whether there existed sufficient conduct on the part of appellants (defendants) and ample consideration moving to them for removing the oral lease for a term of more than one year from the ban of the statute," he clearly erred in so doing. The question is obviously one that only a chancellor can decide. In the very nature of things, a judge cannot delegate his chancery powers to a jury under any imaginable circumstances. We have carefully con-

sidered whether or not it can be deemed to appear from the record that what the trial judge actually did was to send certain questions of fact to the jury for determination, retaining certain equitable questions for his own decision. But we have been unable to find any indication therein that this was done.

As hereinbefore pointed out, the complaint purported to present a straight action at law for breach of contract. There is nothing in the complaint to indicate that the plaintiff invoked the equity power of the court. We find nothing in the statement of facts to indicate that such powers were invoked during the course of the trial. The record shows that the court tried an action at law, and, after hearing all the evidence, sent the case to the jury for a general verdict, and that a general verdict was returned and a *judgment at law* entered thereon.

If a study of the complaint and the record of what was done and said at the trial left any doubt as to whether the action was pleaded and tried throughout purely as an action at law, that doubt would be resolved by the respondent's brief. The respondent's brief quotes from a number of our former decisions, to the point that the trial court, in passing upon a motion for judgment notwithstanding the verdict, and this court, in reviewing its ruling thereon, are bound to accept the verdict of the jury, if supported by any evidence or reasonable inferences from evidence. In pointing out to this court its duty in that respect, the respondent includes, among other quotations, the following from *Brandt v. Northern Pac. R. Co.*, 105 Wash. 138, 177 Pac. 806, 181 Pac. 682:

"That we, sitting as jurors, might have found otherwise is no answer to the fact that there was substantial evidence before the jury to the effect indicated. And the jury having believed that evidence, rather than

that which contradicted it, we are powerless to interfere."

Such a line of argument would not, of course, be submitted to support a verdict in an equity action, since it is elementary that such verdicts are merely advisory in character.

The respondent, in support of the judgment, contends that the jury not only decided that the defendants were equitably estopped, but that their decision is conclusive. If the question of equitable estoppel, by part performance or otherwise, was ever in the case—for we find no mention of it in the record and until we reach the printed briefs—it had no place there. The doctrine is not recognized in a suit at law brought to recover damages for breach of a contract within the statute of frauds.

The English statute of frauds was passed for the purpose of preventing fraud, but it was soon found that, in particular instances, it resulted in grave injustices. The English courts of equity invented the doctrine of part performance in order to afford a remedy for such wrongs. But, in affording such relief, they did not pretend, nor have they ever pretended, to give validity to a contract which the law says is invalid. They and the courts which follow their example merely afford a remedy to one who would otherwise suffer from the unjust operation of a valid statute. In such an equity action, the suit is not upon the contract or to enforce the contract. There is no contract. A suit at law for damages for breach of contract must be on a valid contract; for, otherwise, there could be no legal breach.

(In this connection, see the voluminous note in 101 A. L. R. 923, particularly at pages 928-933. It has been widely regretted that the equity courts ever interposed the power to give relief in such cases, p. 932,

including footnotes. In four states, Kentucky, Mississippi, North Carolina, and Tennessee, the equitable doctrine has been wholly repudiated, p. 944.)

Instead of citing a multitude of cases to the effect that the doctrine of part performance, being equitable, has no place in a law action, we quote the introductory statement to a note in 59 A. L. R. 1305, which cites and discusses a great number of decisions to that effect:

"It appears to be the general rule that the doctrine of part performance is purely an equitable doctrine, unrecognized at law, and accordingly will not sustain an action at law based on a contract within the Statute of Frauds."

This statement is followed by a citation of a long list of decisions, including two decisions of this court: *Johnson v. Upper,* 38 Wash. 693, 80 Pac. 801, and *Chamberlain v. Abrams,* 36 Wash. 587, 79 Pac. 204. Later in the note (p. 1307), a detailed discussion of many of the cases cited is introduced by the following statement:

"In the great majority of the cases herein treated, the form of action brought appears to have been an action at law to recover damages for breach of a contract within the Statute of Frauds. As stated in the general rule, such an action cannot be sustained on the ground of part performance, since the doctrine of part performance is not recognized at law."

The A. L. R. note from which the foregoing statement is taken was published in 1929. That the law, as therein stated, is still the law is shown by later decisions. We select for quotation an excerpt from an opinion from the supreme court of errors of Connecticut as being especially valuable for its quotations from standard texts and for its comment as to the weight of authority in 1937:

" 'The doctrine of part performance is purely a creation of equity and is not recognized at law. Hence it

follows that no distinctively legal action can be maintained upon an oral contract within the statute of frauds.' 5 Pomeroy, Equity Jurisprudence (2d Ed.) § 2240, p. 5005. An action for damages for the breach of such a contract 'is in effect one for its enforcement and cannot be maintained; and this is, as a general rule, held true though there has been such a part performance by the plaintiff as would authorize a court of equity to decree specific performance by the other party.' 25 R. C. L. p. 691. The requirements of the statute are not satisfied by part performance so as to make the contract fully enforceable. Amer. Law Inst. Restatement, Contracts, Vol. 1, § 197. The decisions in all the States which have had occasion to determine the question, with one exception (Georgia), hold in effect that the doctrine of part performance, being purely equitable, is not recognized in actions at law and is not available in such actions to recover damages for breach of a contract within the statute of frauds." *Wolfe v. Wallingford Bank & Trust Co.*, 122 Conn. 507, 191 Atl. 88.

The general doctrine of equitable estoppel, of which the doctrine of part performance is a phase, is, of course, as its name indicates, a purely equitable doctrine.

██ ██ Our current practice with respect to challenges, interposed at the close of all the evidence, to the sufficiency of the evidence to warrant a jury verdict is prescribed by § 2, chapter 89, Laws of 1929, p. 173, Rem. Rev. Stat., § 410-1 [P. C. § 8122-2]. This statute provides that a defendant may, at the close of all the evidence, challenge the sufficiency of the evidence to warrant a verdict in favor of the adverse party,

" . . . and if the court shall *decide* as a matter of law the evidence does not warrant a verdict, it shall thereupon discharge the jury from further consideration of the case and enter a judgment in accordance with its *decision*, . . . " (Italics ours.)

It would seem that, if the court decides that the evidence does not warrant a verdict, a judgment in accordance with its decision would be a judgment of dismissal.

The defendants, at the close of all the evidence, challenged its sufficiency,

" . . . for the reason that the evidence of the plaintiff is not sufficient to justify a verdict in behalf of the plaintiff and against the defendants, or either of them, for any sum or sums whatsoever, . . ." St. 232.

The challenge was denied, and the denial is assigned as error.

The evidence in the case was in great conflict on many material points, but let it be conceded that, at the close of all the evidence, the plaintiff had proved all of the material, factual allegations of his complaint, and had conclusively established: (1) that the defendants made the promise alleged, (2) upon sufficient consideration; (3) that they refused to perform the promise; and (4) that, as a result of such refusal, the plaintiff suffered monetary loss—still, the evidence did not warrant a verdict in his favor, because the contract was oral, and, therefore, unenforcible. As this court long ago said in its opinion in *Chamberlain v. Abrams, supra*:

"Before there can be a recovery in damages for the breach of a contract, there must be an enforceable contract. Damages flow from the violation of legal rights, not for the violation of mere moral obligations, however strong they may appeal to the conscience."

The judgment appealed from is reversed and the cause dismissed.

BLAKE, MAIN, SIMPSON, and JEFFERS, JJ., concur.