[No. 41574.    En Banc.    January 21, 1971.]

RICHARD P. MILLER *et al., Petitioners*, v. HAROLD McCAMISH *et al., Respondents.**

*Reported in 479 P.2d 919.

*Dean W. Loney* (of *Loney, Westland & Raekes*), for petitioners.

*Daniel J. Hurson,* for respondents.

FINLEY, J.—In 1963, the McCamishes and the Millers entered into discussions concerning the future operation of the McCamish farm. Harold McCamish, a lifetime farmer then experiencing failing health, was interested in finding a competent person to work his farm. Richard Miller, who was then employed in Spokane, agreed to take the job, commencing in February of 1964. It is apparent from the facts surrounding the parties' negotiations that McCamish was anxious to sell his farm. The parties did not put their agreement in writing; however, from evidence presented, the trial court found that the parties had entered an agreement whereby: (1) Miller would move onto the McCamish farm and reside thereon rent free; (2) Miller would be employed to work the farm for an annual salary of $6,000, but one-half ($3,000) would be retained by McCamish and applied to the purchase price of the farm should Miller choose to buy at the end of 3 years; (3) Should Miller choose not to purchase the farm, he would receive one-half of the annual retained salary ($1,500); (4) Additionally, in the event that Miller purchased the McCamish farm, he would receive, as credit toward the purchase price, one-third of the farm's increased value over $40,000, less capital investments; and (5) Should the parties be un-

able to agree upon the purchase price a board of three appraisers would be appointed to establish the value of the farm property.

Pursuant to the parties' agreement, the Millers moved to and operated, the McCamish farm. With McCamish paying the expenses as agreed, Miller improved the farm and expanded its productivity. He improved the house, developed and put under irrigation an additional 50 acres of land, and planted 32 acres of permanent crop asparagus. Prior to Miller's employment, the farm had not grown a permanent crop.

In early 1966, Miller offered to purchase the McCamish farm for a price of $77,000. This offer was refused by McCamish. In August of 1966, a dispute arose between the parties over use of a certain chemical to be applied to the farm's potato crop. Miller refused to apply the chemical suggested by McCamish, and the latter secured its application by aircraft. Thereafter, the parties, through their respective counsel, exchanged letters of relevance to portions of the instant appeal. A letter from Miller to McCamish stated, in part, (a) that McCamish was unable to agree on the farm's purchase price; and (b) that Miller was then prepared, in accordance with the parties' agreement, to select an appraiser. A letter from McCamish responded, stating in part (a) that the parties had *never* reached a firm agreement regarding the sale of the farm; (b) that Miller, as McCamish's employee, had failed to carry out McCamish's instructions; (c) that Miller was to vacate the premises by the end of August; but (d) that McCamish was willing to sell the farm to Miller if a "satisfactory agreement" could be reached. Miller vacated the farm at the end of August and commenced the instant action against McCamish the following month. During pendency of the instant action, McCamish sold the farm to a third person for the sum of $85,000.

The *form* of the Millers' action is of significance to the instant appeal. Read objectively, the Miller complaint must clearly be characterized as an action to recover *legal damages* arising from the McCamishes' alleged breach of the

oral contract or agreement to sell the farm. The complaint cannot fairly be read to encompass a plea for *traditional equitable relief* either in the form of specific performance or in the form of quantum meruit based upon unjust enrichment. Further, it is apparent that the parties' oral contract or agreement falls, at least initially, within the wording of our two statutes of frauds: RCW 19.36.010, which provides that

> any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof . . .

and RCW 64.04.010 which provides that "[e]very conveyance of real estate, or any interest therein, . . . shall be by deed".

Upon trial of the instant action, the Millers were awarded money damages in the amount of $12,823.27—a figure representing *both* a sum for one-half of Miller's wages retained by McCamish during the period of Miller's employment ($3,875) *and* a sum amounting to one-third of the farm's increased value over $40,000, less capital investments ($8,948.27). The McCamishes admit liability for the retained wages, and the amount thereof is not in substantial dispute. We therefore affirm—as did the Court of Appeals— the trial court's award as to the retained wages. The Court of Appeals, however, felt constrained—on the basis of this court's prior decisions—to reverse that portion of the trial court's award representing damages for one-third of the farm's increased value. The Millers appeal from this latter determination.

The instant appeal thus presents the issue, as accurately stated by the Court of Appeals, *whether a contract, within the statute of frauds and exempted therefrom by part performance, may serve as a basis for an action at law for money damages.* Upon the facts presented herein and the reasons developed below, we hold in the affirmative,

Unquestionably, the generally stated and often repeated

rubric in this area is that the doctrine of part performance, being an equitable doctrine unrecognized at law, accordingly will not sustain an action at law based on a contract within the statute of frauds. We have previously so held this to be the rule. *See Goodwin v. Gillingham*, 10 Wn.2d 656, 117 P.2d 959 (1941). And, this rule is widely, although not unanimously, recognized and applied in other jurisdictions. *See* Annot., 59 A.L.R. 1305 (1929).

We believe it appropriate at this point to focus upon and to reexamine the rationale behind the prohibition against recovery of legal damages in view of the circumstances in this case, and to determine whether that prohibition retains continuing validity. At the outset it is relevant to note that the statute of frauds has never been given "blind" or absolute implementation and application by the courts. From earliest times the English courts of chancery exhibited a willingness, and have proclaimed and granted, suitable relief in those instances where strict application of the statute of frauds, resulting in total avoidance of the parties' oral agreement, would produce an inequitable result. Thus, courts have long granted equitable relief both in the form of specific performance and in the form of recovery in quantum meruit based upon unjust enrichment where sufficient showing or proof of part performance by the parties to the oral agreement warrants the granting of such relief.

The reasoning behind the willingness on the part of courts to grant equitable relief from the strict operation of the statute of frauds in appropriate cases is, clearly, apparent within the rationale behind, and reason for enactment of, the statute of frauds itself:

> The purpose and intent of the statute of frauds is to prevent fraud, and not to aid in its perpetration, and courts, particularly the courts of equity, will, so far as possible, refuse to allow it to be used as a shield to protect fraud, or an instrument whereby to perpetrate a fraud, . . . On the contrary, the courts will endeavor in every proper way to prevent the use of the statute of frauds as an instrument of fraud or as a shield for a dishonest and unscrupulous person, *and under modern*

*theory of practice, what a court of equity would do, law courts, under proper allegations, will no doubt also do.* The courts do not tolerate the use of the statute of frauds to enable one to take advantage of his own wrong. As has been said, *that principle of law or legislative enactment would be an anomaly which, while attempting to prevent fraud, would become an instrumentality for the perpetration of fraud.*

(Italics ours. Footnotes omitted.) 49 Am. Jur. *Statute of Frauds* § 578 (1943).

Thus, this court has long held that an agreement to convey an estate in real property, though required by RCW 64.04.010 and 64.04.020 to be in writing with the formal requisites specified for a deed, may be proved without a writing, given sufficient part performance; and that specific performance will be granted where the acts allegedly constituting the part performance point unmistakably and exclusively to the existence of the claimed agreement. *See, e.g., Mobley v. Harkins*, 14 Wn.2d 276, 128 P.2d 289, 143 A.L.R. 88 (1942); *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 171 P.2d 703 (1946); *Granquist v. McKean*, 29 Wn.2d 440, 187 P.2d 623 (1947); *Ormiston v. Boast*, 68 Wn.2d 548, 413 P.2d 969 (1966); *Ferguson v. McBride*, 69 Wn.2d 35, 416 P.2d 464 (1966); *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 457 P.2d 603 (1969). Similarly, where specific performance is not available, this court has held that, upon an owner's breach of an oral contract to convey lands to another then residing thereon, the owner of the lands is liable for the value of improvements placed thereon by such other person, over and above the value of the rents and profits while occupied. *See, e.g., Ernst v. Schmidt*, 66 Wash. 452, 119 P. 828 (1912); *Gregory v. Peabody*, 149 Wash. 227, 270 P. 825 (1928); *Gregory v. Peabody*, 153 Wash. 99, 279 P. 102 (1929); *Lager v. Berggren*, 191 Wash. 437, 71 P. 377 (1937); *Hardgrove v. Bowman*, 10 Wn.2d 136, 116 P.2d 336 (1941).

However, this court, heretofore, has consistently disallowed and voided actions seeking the remedy of legal damages upon contracts within the statute of frauds even where such contracts have been partly performed. *See, e.g.,*

*Chamberlain v. Abrams,* 36 Wash. 587, 79 P. 204 (1905); *Johnson v. Upper,* 38 Wash. 693, 80 P. 801 (1905); *Goodwin v. Gillingham,* 10 Wn.2d 656, 117 P.2d 959 (1941). The reasoning behind this denial of the remedy of legal damages is uniformly stated in the following manner:

> [t]he doctrine of part performance operates not upon the theory that the part performance is a substitute for the written evidence required by the statute of frauds, but on the theory that the defendant may be estopped in view of the part performance to assert the statute as a defense. Part performance takes the case out of the statute not because it furnishes proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land knowingly to suffer another to invest time, labor, and money in that land, upon the faith of a contract which did not exist.

(Footnote omitted.) 49 Am. Jur. *Statute of Frauds* § 422 (1943), and;

> [t]he courts are not prepared to go to the extent of holding that a party may recover damages for the breach of every contract which a court of equity would specifically enforce. It would only be an evasion of the statute, in spite of part performance, if damages were to be allowed for breach of an oral contract falling within its purview. Similarly, no recovery can be had in an action at law for services performed in pursuance of an oral land contract, which is based upon the express oral agreement plus part performance rather than upon implied agreement.

(Footnotes omitted.) 49 Am. Jur. *Statute of Frauds* § 426 (1943), and furthermore;

> [e]quity has no concern in cases of part performance except to prevent the perpetration of a fraud. *That is the only ground which can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annulment of the statute would be merely bare usurpation.*

(Italics ours. Footnotes omitted.) 49 Am. Jur. *Statute of Frauds* § 427 (1943).

With deference to the above reasoning—if for no reason other than the frequency of its repetition—we find it somewhat analogous to uncritical tautology, or old cliches, which

lack pragmatic justification. It is undoubtedly true that, historically, English courts of chancery were motivated to grant equitable relief as to partly performed oral contracts *in order to prevent imposition of inequities* upon deserving or innocent parties. In so acting, these courts were often criticized for granting such relief in an ad hoc, or sometimes seemingly plenary or arrogant manner. Without doubt, the *same factors* which motivated early chancery courts to grant equitable relief *similarly motivate* American courts to grant relief in such cases—*i.e.*, the prevention of fraud and unjust enrichment at the expense of innocent parties. However, although motivated to grant relief in such cases for similar reasons, we believe that American courts may, and indeed should, premise the granting of such relief not upon a basis possibly describable as plenary or arrogant, but rather upon the basis of a long-standing, well-recognized and clearly legitimate judicial function—*viz.*, the function of interpreting legislative enactments.

█    Clearly, statutory interpretation, effectuating the intent of the legislature, is a legitimate function of American courts. Indeed, the interpretation and effectuation of legislative statutory enactments, to the fullest extent constitutionally permissible, is a paramount function of American courts of law.

█    As we have previously noted, there can be little question as to the intent of the legislature in the enactment of RCW 19.36.010 and RCW 64.04.010. The clear purpose and intent behind these statutes of frauds is the prevention of fraud. To apply these statutes in such a manner as to promote and encourage fraud would be to *defeat the clear and unambiguous intent of the legislature in their enactment.*

█ █    Thus, it is less than an objective assessment to state that courts do not view part performance as a device furnishing satisfactory proof of the oral contract or agreement thereby removing it from the evil sought to be prevented by the statute of frauds. As evidenced by the test required in this state to successfully assert part performance, the court's overriding concern *is precisely directed*

*toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement:*

The first requirement of the doctrine that part performance of an oral contract exempts it from the provisions of the statute of frauds is that the contract be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract. . . .

A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance.

. . .

Another requirement of the doctrine . . . is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient.

(Citations omitted.) *Granquist v. McKean,* 29 Wn.2d 440, 445, 187 P.2d 623 (1947).

Where the stringent proof requirements of the above test are met, courts grant relief from the statute of frauds for the specific reason that *to enforce the statute would be to defeat the very purpose for which it was enacted—i.e.,* the prevention of fraud arising from *uncertainty* inherent in oral contractual undertakings. *Where no uncertainty exists in the oral agreement, the reason for the statute's application similarly disappears.*

█ Judicial relief thus premised upon the rationale of statutory interpretation need not be confined to that of an equitable nature. Rather, it may properly include the recovery of legal damages where appropriate. We therefore hold that, where an oral contract or agreement is satisfactorily demonstrated under the existing test applied by this court, such oral contract or agreement, within the statute of frauds but exempted therefrom by part performance, may serve as a basis for an action at law for money damages. We premise this holding upon the reasoning that, to hold otherwise, would be to defeat the legislative intent inherent in the statute of frauds.

In so holding we in no manner mean to imply removal of the availability of the traditional equitable remedies in those cases where equitable relief is appropriate. To the contrary, where the party in breach of the oral contract has not transferred his property to an innocent third party, the remedy of specific performance remains available to the injured party, upon requisite proof of the oral contract, because he is entitled to the *benefit of his bargain*. Alternatively, however, where the breaching party has transferred the property thus making specific performance impossible, the injured party, upon proper showing, is nevertheless entitled to the benefit of his bargain and he may seek it through legal damages. Additionally, the equitable relief of quantum meruit may remain appropriate in certain actions. Thus, where the parties' part performance of the oral agreement is not sufficiently definitive to allow the court properly to determine the terms of the agreement or the relationship established thereby, the injured party is nevertheless entitled to relief in quantum meruit to the extent by which the breaching party is benefited in order to prevent his unjust enrichment.

■ We now turn to a determination of the appropriate relief to be granted in the instant action, based upon the facts established at trial. We find the evidence herein sufficient to justify the granting of appropriate legal damages. Evidence of the parties' part performance of their oral agreement is, in our judgment, clear and unequivocal, and leaves no doubt as to the terms, character and relationship agreed upon by the parties. Although testimony as to the parties' agreement was disputed, we agree with the Court of Appeals assessment that there is substantial evidence from which the trial court could make its findings concerning the existence and terms of the parties' oral agreement. We find less precision in the term "clear and unequivocal" evidence. As far as that requirement might relate to the specificity in proof of the terms of the oral agreement, we find ample evidence to support the trial court's findings. Beyond this, the term—if it may be ascribed any objective, rather than mere subjective, meaning—must relate to the

quality of the evidence presented and the credibility of the parties testifying as to the oral agreement. Questions of credibility are uniquely and exclusively within the province of the trial court, and we will not disturb that determination on appeal. Further, the evidence leaves no doubt as to the relationship intended by the parties in their oral agreement. Clearly, the parties contemplated an option in Miller to purchase the McCamish farm at the end of the 3 year period.

The trial court found an express oral contract between the parties. Its terms and conditions were amply and specifically proved. The trial court additionally found that the McCamishes breached this contract by wrongfully refusing to determine the purchase price of the farm by means of a board of appraisers as provided by the parties' agreement. As a result of this breach, the Millers were damaged. There is substantial evidence to support the trial court's findings.

For the above reasons, that portion of the Court of Appeals opinion denying the Millers' recovery upon the sum of $8,948.27—representing one-third of the farm's increased value over $40,000, less capital investments—is reversed, and the judgment of the trial court is entirely reinstated. It is so ordered.

HAMILTON, C. J., ROSELLINI, HUNTER, HALE, NEILL, MCGOVERN, and STAFFORD, JJ., concur.

March 24, 1971. Petition for rehearing denied.