[No. 46670. En Banc. September 4, 1980.]

PAUL KLINKE, ET AL, *Respondents,* v. FAMOUS RECIPE FRIED CHICKEN, INC., *Petitioner.*

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* by *Ronald A. Roberts,* for petitioner.

*Mann, King, Anderson, Bingham & Scraggin,* by *Gordon A. Scraggin* and *Samuel H. Pemberton,* for respondents.

UTTER, C.J.—This is an appeal from the Court of Appeals reversal of a summary judgment in favor of petitioner Famous Recipe Fried Chicken, Inc., in an action for damages for breach of an oral agreement. Two issues are presented: (1) May equitable or promissory estoppel be utilized in an action for damages? and (2) Should section 217A of the Restatement (Second) of Contracts be adopted?

Paul Klinke, Brent Klinke, Gregory Klinke and Mitch Gasparovich sued Famous Recipe Fried Chicken, Inc., for $200,000 for lost time and wages and other damages stemming from the alleged breach of an oral agreement under which respondents were to open and operate a fried chicken franchise outlet in the Tacoma area. After summary judgment in favor of petitioner, respondents appealed. In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom in favor of the nonmoving party. If reasonable persons might reach different conclusions, the

motion should be denied. *Millikan v. Board of Directors*, 93 Wn.2d 522, 532, 611 P.2d 414 (1980); *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 552, 588 P.2d 1174 (1979). When viewed most favorably to plaintiff Paul Klinke, the nonmoving party, the summary judgment evidence and inferences establish the following facts. In 1974, Famous Recipe Fried Chicken, Inc. (Famous) issued to Klinke a 10–year franchise to operate a Famous Recipe Restaurant in Yuba City, California. They were not authorized to issue franchises in California when negotiations began and agreed to apply for state approval. The parties then executed a written area deposit agreement for which Klinke paid $1,000. Klinke next secured a location approved by Famous and built a facility. More than a month passed before state approval was obtained. The actual franchise agreement was not executed until after the business opened.

In late 1974 and early 1975 Klinke wished to move to the Tacoma area and discussed the possibility of opening a franchise outlet in Washington with representatives of Famous. In early 1975 Klinke sold the highly successful Yuba City operation and moved to Alaska where he obtained temporary employment. While in Alaska, Klinke contacted the corporation's authorized representative for franchises, Robert Skinner. Skinner agreed that if Klinke left his job, returned to Washington and located a suitable restaurant site, Famous would register in the state and issue a franchise agreement incorporating the terms and provisions of the Yuba City contract. Unlike the Yuba City arrangement, however, no deposit agreement was executed and no money changed hands.

In August 1975, relying upon the agreement with Famous, Klinke left his Alaska job and moved to the Tacoma area. Famous wrote to Klinke in September of 1975 expressing satisfaction that he had made the move and that they would be doing business together in Washington. Klinke, together with Famous representatives,

found a location in Tacoma and, working with representatives from Famous, began to negotiate for its acquisition and development. In turn, Famous applied for Washington registration as a dealer in franchises. Although the application was returned to Famous for minor changes in the late fall, Skinner told Klinke to proceed with site acquisition.

Klinke was still engaged in negotiating for the property when, in April 1976, Famous notified him of its decision not to qualify in Washington and that there would be no franchise. In October 1976, Klinke, his two sons, Brent and Gregory, and his "partner", Mitch Gasparovich, filed this suit against Famous. Interposing the statute of frauds[1] as a defense, Famous moved for summary judgment. Plaintiffs countered by pleading both equitable and promissory estoppel. The trial court granted summary judgment.

The Court of Appeals, Division Two, reversed the trial court, holding that: (1) the theories of equitable or promissory estoppel are available to prevent assertion of the statute of frauds defense, and (2) Paul Klinke's evidence was sufficient to permit submission of the case to the jury under these theories.

I

Will equitable or promissory estoppel support an action for damages? Petitioner Famous relies on *Goodwin v. Gillingham*, 10 Wn.2d 656, 117 P.2d 959 (1941). That case is inapplicable inasmuch as it addresses equitable estoppel, not promissory estoppel.

Equitable estoppel is based upon a representation of

---

[1] RCW 19.36.010(1) provides:

"In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . ."

Because Klinke's agreement with Famous was verbal and called for execution of a 10-year franchise it is within the prohibition of the statute.

existing or past facts, while promissory estoppel requires the existence of a promise. *Hellbaum v. Burwell· & Morford,* 1 Wn. App. 694, 700, 463 P.2d 225 (1969); Annot., *Promissory estoppel as basis for avoidance of the statute of frauds,* 56 A.L.R.3d 1037, 1042 (1974) (hereafter cited as Annot., *Statute of Frauds*). Equitable estoppel also is available only as a "shield" or defense, while promissory estoppel can be used as a "sword" in a cause of action for damages. *Tiffany Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz. App. 415, 493 P.2d 1220, 1224 (1972); Annot., *Statute of Frauds, supra* at 1041–42, 1047. Promissory estoppel based on Restatement of Contracts § 90 (1932) has long been recognized in this state[2] (*Central Heat, Inc. v. Daily Olympian, Inc.,* 74 Wn.2d 126, 443 P.2d 544 (1968); *Hill v. Corbett,* 33 Wn.2d 219, 204 P.2d 845 (1949)) and may serve as the basis for an action for damages.

## II

■ Should Restatement (Second) of Contracts § 217A be adopted? The Court of Appeals correctly based its reversal of the summary judgment on *In re Estate of Nelson,* 85 Wn.2d 602, 537 P.2d 765 (1975) and Restatement of Contracts § 178, comment *f* (1932). *Nelson* holds at pages 610–11: "A party who promises, implicitly or explicitly, to make a memorandum of a contract in order to satisfy the statute of frauds, and then breaks that promise, is estopped to interpose the statute as a defense to the enforcement of the contract by another who relied on it to his detriment." In *Nelson,* we cited Restatement of Contracts § 178, comment *f* (1932) in support of our holding. Comment *f* to section 178 states that a promise to make a memorandum, if relied upon, "may give rise to an effective

---

[2]In *Corbit v. J.I. Case Co.,* 70 Wn.2d 522, 424 P.2d 290 (1967), the court stated at page 539: "In effect, § 90, *supra,* sets out five prerequisites for a recovery in promissory estoppel: (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise."

promissory estoppel if the Statute [of Frauds] would otherwise operate to defraud."

Because on motion for summary judgment, facts have been asserted which show Famous' agent, Skinner, promised to make and execute a written franchise agreement, comment *f* and *Nelson* are applicable and Klinke may bring this action notwithstanding the statute of frauds. Summary judgment in Famous' favor was improper.

The Court of Appeals also adopted Restatement (Second) of Contracts § 217A. Section 217A (Tent. Drafts Nos. 1–7, 1973) reads:

Enforcement by Virtue of Action in Reliance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

This tentative section greatly expands the recognition by the restatement authors that promissory estoppel may be used to avoid the statute of frauds. Annot., *Statute of Frauds, supra* at 1061. It allows a plaintiff to directly enforce an oral promise or agreement otherwise within the

statute of frauds.[3] In certain circumstances this may be done even absent a separate promise to sign a written agreement or to commit the agreement to writing. The section also evidently exempts some *bilateral contracts* from the operation of the statute of frauds by using promissory estoppel—a doctrine traditionally limited to enforcement of otherwise unenforceable promises which are not supported by consideration. *See Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339 (Iowa 1979) (Reynoldson, C.J., dissenting).[4] This attribute is revealed by comment *a* to section 217A, which states the section "applies to promises supported by consideration."[5]

---

[3]At least two courts have taken the position that because the statute of frauds relates to the enforceability of contracts, while promissory estoppel relates to promises which have no contractual basis (are not bargained for), the statute does not apply to actions based on promissory estoppel. *Janke Constr. Co., v. Vulcan Materials Co.,* 386 F. Supp. 687, 697 (W.D. Wis. 1974); *N. Litterio & Co. v. Glassman Constr. Co.,* 319 F.2d 736, 740 n.9 (D.C. Cir. 1963). *See also Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339, 346 (Iowa 1979) (Reynoldson, C.J., dissenting). The Washington statute, however, by its terms applies to any "agreement, contract or promise." RCW 19.36.010.

[4]The purpose of promissory estoppel is "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Raedeke v. Gibraltar Sav. & Loan Ass'n,* 10 Cal. 3d 665, 672–73, 517 P.2d 1157, 1161, 111 Cal. Rptr. 693, 697 (1974), quoting *Youngman v. Nevada Irrigation Dist.,* 70 Cal. 2d 240, 249, 449 P.2d 462, 468, 74 Cal. Rptr. 398, 404 (1969). *See also Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588, 593 (1975) and *Sacred Heart Farmers Coop. Elevator v. Johnson,* 305 Minn. 324, 232 N.W.2d 921, 923 n.1 (1975) (promissory estoppel implies contract from unilateral, otherwise unenforceable promise and is wholly inapplicable where actual contract exists).

[5]We recognize, of course, that an oral bilateral contract for the sale or lease–option of real property may be "removed" from the statute of frauds where there has been sufficient "part performance." *Powers v. Hastings,* 93 Wn.2d 709, 612 P.2d 371 (1980); *Miller v. McCamish,* 78 Wn.2d 821, 479 P.2d 919 (1971); *Richardson v. Taylor Land & Livestock Co.,* 25 Wn.2d 518, 171 P.2d 703 (1946). To the extent that it applies to oral bilateral contracts section 217A might be viewed as an extension of the "part performance" exception.

Section 217A is complementary to the new section 90, Restatement (Second) of Contracts § 90 (Tent. Drafts Nos. 1-7, 1973).[6] Comment *a* to that tentative section provides that the basic principle stated often may render unnecessary any inquiry "as to the precise scope of the policy of enforcing bargains." This indicates that the new section 90, correspondingly, applies to some "bargained for" promises. Annot., *Statute of Frauds, supra* at 1049. *See* illustration 1, comment *a* to Restatement (Second) of Contracts § 90 (Tent. Drafts Nos. 1-7, 1973).

The unforeseen application of section 217A to areas of law outside the scope of the facts of this case convinces us that it would be unwise to adopt that section now unless necessary to effectuate justice. That is not mandated by the facts of this case. Because the promise to execute a written franchise agreement places this case within the rule of *Nelson* and comment *f* to Restatement of Contracts, section 178, we need not now adopt the tentative draft of Restatement (Second) of Contracts, section 217A. *See Chapman v. Bomann*, 381 A.2d 1123, 1130 n.6 (Me. 1978).[7]

We affirm the Court of Appeals reversal of the summary judgment in favor of petitioner Famous. However, we disagree with the portions of the Court of Appeals decision which find the theory of equitable estoppel available in the instant case and adopt Restatement (Second) of Contracts,

---

[6]The tentative draft of section 90 reads in part:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (Second) of Contracts, § 90 (Tent. Drafts Nos. 1-7, 1973).

[7]The highest courts of Hawaii, Iowa and Kansas have adopted section 217A. *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339 (Iowa 1979); *Walker v. Ireton*, 221 Kan. 314, 559 P.2d 340 (1977); *McIntosh v. Murphy*, 52 Haw. 29, 469 P.2d 177 (1970). The Wyoming Supreme Court apparently approves of the section. *Remilong v. Crolla*, 576 P.2d 461, 465 (Wyo. 1978).

§ 217A as the law in Washington. The cause is remanded for further proceedings consistent with this opinion.

ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and BAKER, J. Pro Tem., concur.