[No. 14192-2-II. Division Two. December 8, 1993.]

ROBERT GREAVES, *Appellant,* v. MEDICAL IMAGING SYSTEMS, INC., ET AL, *Respondents.*

*Peter S. Lewicki; William E. Cullen, Jr.,* and *Cullen & Cullen,* for appellant.

*Craig H. Bennion* and *Cozen & O'Connor,* for respondents.

ALEXANDER, C.J. — Robert Greaves appeals an order of the Lewis County Superior Court granting a summary judgment to Medical Imaging Systems, Inc. (MIS), dismissing Greaves's lawsuit against MIS for breach of a contract of employment. We reverse and remand for trial.

Viewing the submissions most favorably to Robert Greaves, the following facts emerge. From January 1985 to April 1988, Robert Greaves was employed as the manager of the diagnostic imaging department at Centralia General Hospital in Centralia. In April 1988, Centralia General Hospital was purchased by the Sisters of Providence. Thereafter, the hospital began doing business as Providence Hospital-Centralia (Providence-C). Providence-C and Greaves then entered into a contract which provided that Providence-C would employ Greaves as a nuclear medical technologist for 3 years at an annual salary of $36,000.

Before April 1988, MIS had performed nuclear medical services at other hospitals operated by the Sisters of Providence. Following the change of ownership of Centralia General Hospital, MIS began negotiating with the supervisor of Providence-C's radiology department in an effort to assume management of the radiology department at Providence-C. The parties eventually reached an agreement which provided that MIS would take over Providence-C's radiology department, effective September 1, 1988. As a consequence, MIS and Providence-C underwent a transition in anticipation of MIS's takeover of the radiology department. During the summer of 1988, MIS moved its equipment to Providence-C and began billing Providence-C for services it rendered at that hospital. Because Greaves was receiving his salary from Providence-C during this period, Providence-C billed MIS for the amount of its payments to Greaves.

In July 1988, James Kirker, the president of MIS, approached Greaves about the possibility of Greaves becoming an MIS employee. Greaves told Kirker of his 3-year contract with Providence-C, and expressed concern that MIS might fire him if MIS's contract with another hospital operated by the Sisters of Providence, Saint Joseph's Hospital in Aberdeen, were to be canceled and an MIS employee at that hospital, Gary Fisher, were to be transferred to Providence-C. Kirker assured Greaves that this would not happen and offered him a position with MIS for 5 years at an annual salary of $36,000. Greaves accepted the offer, but no written contract was signed by the parties. Kirker did, however, send two letters to Greaves which "identifie[d]" Greaves's salary, but did not specify any other terms of employment. Greaves became an MIS employee effective September 15, 1988.

In March 1989, Greaves discovered that Gary Fisher had told employees at other hospitals that he would be replacing Greaves at Providence-C because of Greaves's poor work performance. When questioned by Greaves, Kirker claimed to have received letters from Greaves's supervisor, Dick Seidel, about poor work by Greaves. When asked to produce the letters, Kirker claimed that he had misplaced them. Kirker promised to mail copies of the letters to Greaves as soon as he located them, but ultimately failed to do so. Seidel denied sending any such letters to Kirker. The assistant administrator of Providence-C, Steve Worral, assured Greaves that he was not aware of any complaints against Greaves.

On April 9, 1989, Greaves received a message from Kirker to the effect that Seidel was upset with Greaves and that Kirker would call him at his home "tomorrow" to discuss matters. Kirker did not call Greaves. Three days later, Greaves called Kirker for an explanation. Greaves asserts that Kirker told him that MIS needed to accommodate Fisher because MIS's contract at Saint Joseph's Hospital in Aberdeen had been canceled or not renewed. Kirker alleged in an affidavit that Greaves was terminated for "business necessity", due to loss of the Aberdeen contract.

Greaves brought suit in Lewis County Superior Court against MIS and Kirker for what he claimed was wrongful termination of his employment, breach of a 5-year oral contract and defamation by an MIS employee, Fisher. The defendants answered, asserting, among other things, that Greaves's lawsuit was barred by the statute of frauds.

The defendants moved for summary judgment. At the conclusion of argument on their motion, the hearing judge stated that:

> Looking at the evidence most favorably to the plaintiff . . . I think there is evidence of an express contract for a definite term, and implied for cause termination only goes with that.

The hearing judge held that the express contract was for a term greater than 1 year (3 to 5 years) and, thus, the suit to enforce it was barred by the statute of frauds unless the contract was outside of the reach of that statute. The hearing judge also concluded that the "additional consideration" that Greaves gave by leaving his old job did not give rise to an implied contract to terminate only "for cause".[1] The hearing judge granted summary judgment to MIS and Kirker, concluding that Greaves's claim was barred by the statute of frauds. In doing so, the trial judge stated:

> I think what this is all about across the country, is the slow development of law and changes in the law, is that the statute of frauds is being seen in some areas as being overly harsh and having harsh results, and that may or may not be the case in this case that is before us, but Washington has not expanded those rules yet, as I read the authorities presented to me, and it's my feeling that it's the more proper role for the trial court to apply the present law. If, as Mr. Greene suggests, the appellate courts are ready to expand the application of equitable estoppel, I think it's more proper that they be the ones to do it. They have the benefit of more time and the assistance of law clerks and so on and certainly more and better minds, no question about that.

Greaves contends, on appeal, that the hearing judge erred in concluding that his claim was barred by the provi-

---

[1] The judge reserved judgment as to whether an oral express contract for a term of years automatically created an implied contract to terminate only "for cause".

sions of RCW 19.36.010, the statute of frauds relating to contracts. That statute provides, in pertinent part, as follows:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . .

This statute has been applied in the employment contract context. *See, e.g., Dudley v. Boise Cascade Corp.*, 76 Wn.2d 466, 470, 457 P.2d 586 (1969). The underlying purpose behind the statute of frauds is to prevent fraud, not to be a means of its perpetration. *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 465, 457 P.2d 603 (1969).

The parties agree that the trial court correctly concluded that the contract in question was an express oral contract which provided that Greaves would have employment with MIS for a period of either 3 or 5 years. Furthermore, Greaves's counsel concedes that the statute of frauds generally bars claims based on an oral employment contract for more than 1 year.

Greaves asserts, however, that two doctrines take this case out of the statute of frauds and make the oral contract enforceable. The first is the doctrine of equitable estoppel. Equitable estoppel, however, is not available for "offensive" use by plaintiffs. *See, e.g., Chemical Bank v. WPPSS*, 102 Wn.2d 874, 901-02, 691 P.2d 524 (1984), *cert. denied sub nom. Haberman v. Chemical Bank*, 471 U.S. 1065, 85 L. Ed. 2d 497, 105 S. Ct. 2140 (1985). Equitable estoppel does not help Greaves here.

■■ Greaves's second assertion is that the doctrine of promissory estoppel removes the contract from the statute of frauds. In support of his argument, Greaves relies primarily on Restatement (Second) of Contracts § 139 (1981), which provides:

Enforcement by Virtue of Action in Reliance
(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:
    (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
    (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
    (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
    (d) the reasonableness of the action or forbearance;
    (e) the extent to which the action or forbearance was foreseeable by the promisor.

The Washington Supreme Court has previously considered adoption of this provision of the Restatement. In *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 262, 616 P.2d 644 (1980), the court, although affirming a decision of this court and reiterating its approval of the doctrine of promissory estoppel, declined, under the particular facts of that case, to adopt section 217A of the tentative draft of Restatement (Second) of Contracts § 217A.[2] In suggesting that it would reserve for another day the adoption of the aforementioned restatement provision relating to promissory estoppel, the court stated:

> The unforeseen application of section 217A to areas of law outside the scope of the facts of this case convinces us that it would be unwise to adopt that section now unless necessary to effectuate justice. That is not mandated by the facts of this case. Because the promise to execute a written franchise agreement places this case within the rule of [*In re Estate of*] *Nelson*[, 85 Wn.2d 602, 537 P.2d 765 (1975)] and comment *f* to Restatement of Contracts, section 178, we need not now adopt

---

[2]The text of § 217A of the tentative draft of Restatement (Second) of Contracts is identical to that of Restatement (Second) of Contracts § 139 (1981).

the tentative draft of Restatement (Second) of Contracts, section 217A. *See Chapman v. Bomann*, 381 A.2d 1123, 1130 n.6 (Me. 1978).

*Klinke*, 94 Wn.2d at 262. *See also Family Med. Bldg., Inc. v. Department of Social & Health Servs.*, 104 Wn.2d 105, 111-12, 702 P.2d 459 (1985); *Lectus, Inc. v. Rainier Nat'l Bank*, 97 Wn.2d 584, 590, 647 P.2d 1001 (1982); *Lige Dickson Co. v. Union Oil Co.*, 96 Wn.2d 291, 635 P.2d 103 (1981).[3]

Despite the fact that the Supreme Court found it unnecessary to adopt Restatement (Second) of Contracts § 139 in order to effectuate justice in *Klinke*, we conclude that the time is ripe to adopt its principles as the law of this state. At the time *Klinke* was decided, only Hawaii, Iowa, and Kansas had fully adopted that provision of the Restatement. *Klinke*, 94 Wn.2d at 262 n.7. In the years since the *Klinke* decision, many other states have applied section 139. *See, e.g., Hoffius v. Maestri*, 31 Ark. App. 13, 786 S.W.2d 846 (1990); *Munoz v. Kaiser Steel Corp.*, 156 Cal. App. 3d 965, 203 Cal. Rptr. 345 (1984); *Kiely v. St. Germain*, 670 P.2d 764 (Colo. 1983); *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 421 N.E.2d 182 (1981); *Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840 (Ind. Ct. App. 1987); *Geisinger v. A&B Farms, Inc.*, 820 S.W.2d 96 (Mo. Ct. App. 1991); *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 440 N.W.2d 825 (Ct. App. 1989). Additionally, New York has adopted a modified version of Restatement (Second) of Contracts § 139 which requires plaintiffs to also show an "unconscionable injury". *See Klein v. Jamor Purveyors, Inc.*, 108 A.D.2d 344, 489 N.Y.S.2d 556 (1985); *D&N Boening, Inc. v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 471 N.Y.S.2d 299, *aff'd*, 63 N.Y.2d 449, 472 N.E.2d 992, 483 N.Y.S.2d 164 (1984); *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917 (1983).

As suggested by the Supreme Court in *Klinke*, there are cases where a rule like that embodied in Restatement (Sec-

[3]The court in *Klinke* did, however, reaffirm the rule that a promise to reduce a promise to writing is sufficient to defeat the statute of frauds. *Klinke*, 94 Wn.2d at 259-60.

ond) of Contracts § 139 is necessary to avoid an injustice. Reviewing the facts before us in the light most favorable to Greaves, this appears to be such a case. First, we note that no other remedies are available to Greaves that would allow him to be restored to his prior position. Providence-C cannot be compelled to restore Greaves to his former position. Second, Greaves's act of leaving employment with Providence-C and abandoning a 3-year employment contract was a "definite and substantial" act or forbearance by Greaves. Third, Greaves's departure from his position with Providence-C corroborates the existence and terms of MIS's offer of a longer term of employment at the same salary. Fourth, Greaves's departure from Providence-C was eminently reasonable, in light of MIS's offer of better employment and MIS and Kirker's assurances that he would not be terminated. Fifth, MIS and Kirker could reasonably foresee that their offer of better employment would entice Greaves to leave employment with Providence-C. The offer was, in fact, designed to do so. We conclude, as we did in *Klinke v. Famous Recipe Fried Chicken, Inc.*, 24 Wn. App. 202, 600 P.2d 1034 (1979), *aff'd on other grounds*, 94 Wn.2d 255, 616 P.2d 644 (1980), that:

> It is appropriate for modern courts to cast aside the raiments of conceptualism which cloak the true policies underlying the reasoning behind the many decisions enforcing contracts that violate the Statute of Frauds. There is certainly no need to resort to legal rubrics or meticulous legal formulas when better explanations are available. . . .
>
> . . .
> In seeking to frame a workable test which is flexible enough to cover diverse factual situations and also provide some reviewable standards, we find very persuasive section 217A of the [tentative draft of the] Second Restatement of Contracts. That section specifically covers those situations where there has been reliance on an oral contract which falls within the Statute of Frauds. . . .
>
> . . .
> We think that the approach taken in the Restatement is the proper method of giving the trial court the necessary latitude to relieve a party of the hardships of the Statute of Frauds. Other courts have used similar approaches in dealing with oral employment contracts upon which an employee

had seriously relied. See *Alaska Airlines, Inc. v. Stephenson*, 217 F.2d 295 (9th Cir. 1954); *Seymour v. Oelrichs*, 156 Cal. 782, 106 P. 88 (1909). This is to be preferred over having the trial court bend over backwards to take the contract out of the Statute of Frauds.

*Klinke*, 24 Wn. App. at 213-14 (quoting *McIntosh v. Murphy*, 52 Hawaii 29, 35-37, 469 P.2d 177 (1970)).

In order to effectuate justice in this case, we conclude that the time is ripe to adopt Restatement (Second) of Contracts § 139 (1981). We, therefore, reverse the trial court's ruling on summary judgment. At the trial on the merits, the trial court should make factual determinations as to each of the factors enumerated in Restatement (Second) of Contracts § 139.

Reversed.

MORGAN, J., and PETRICH, J. Pro Tem., concur.

Review granted at 123 Wn.2d 1013 (1994).