The complainant, Grant, obtained an option from the Nordhoff Land Company to purchase a tract of land, about one hundred and five acres, in Bergen county, of which the parcel in controversy is a part. Before his option expired he interested Peter M. Steenland and his brother Rollo, the stockholders of the defendant Steenland Construction Company, *Page 83 
in his enterprise, and on December 10th, 1923, secured a second option running jointly to himself and the Steenland company, by the terms of which they acquired the right to purchase parcel A of said land, about seventy-five acres, at $2,000 per acre, and to pay for the same by their joint and several bond for the total of the purchase price, payable January 1st, 1934, with six per cent. interest, payable January 1st, 1927, and semi-annually thereafter, secured by mortgage on the land. If the option as to parcel A be exercised, executed and performed, then the option as to parcel B, constituting the remainder of the Nordhoff tract, should be available until January 1st, 1929, upon substantially the same terms. The option as to parcel A was duly exercised by the complainant and the Steenland company December 17th, 1923. By a supplemental agreement a few acres of parcel B were added to parcel A and included in the deed and mortgage. The deed and bond and mortgage were delivered February 13th, 1924. The deed was made to the Steenland Construction Company and it executed the bond and mortgage for $153,178 in the terms of the option. Grant and the two Steenlands signed a guarantee annexed to the bond in this language:
"For value received the undersigned, Roderick D. Grant, Peter M. Steenland and Rollo Steenland, hereby jointly and severally guarantee the prompt payment of the principal of the within bond together with the interest thereon, and Roderick D. Grant unconditionally guarantees the performance of all the terms, covenants and conditions of the within bond and of the mortgage accompanying said bond."
The land was bought for subdivision and development, and by arrangement between the optionees and owner the title was taken in the name of the Steenland Construction Company for greater facility and convenience in selling and conveying lots, with the understanding that it was to be held for the joint benefit of the optionees. Grant had no money; that was well known to the Steenlands. He was to have a drawing account of $100 per week during the promotion. He brought the proposition to the Steenlands to finance and promote *Page 84 
with his help, and they were to share the profits equally. It was thought and hoped that the cost of development and payment of the mortgages could be anticipated from the proceeds of the sale of lots and that there would be a handsome profit. In this they were disappointed. During the first year, despite the activities of both Grant and the Steenlands, six houses were built, but only one was sold. The Steenlands became dissatisfied and abruptly repudiated Grant's interest in the enterprise on December 29th, 1924. They had spent $5,500 in surveys, blueprints, engineers,c., in preparing the tract for market and for advances to Grant, and the due date was rapidly approaching for part payment on the mortgage — payment for releases on ten per cent. of the area of the tract. It is open to suspicion that the reason for the Steenlands' conduct was that they saw large profits ahead and felt that Grant's share was disproportionate. Grant insisted that they carry out their bargain or return the property to him so that he could seek capital elsewhere to promote the scheme, and after considerable futile negotiations to reach a working agreement, in which Grant offered to take a third instead of half of the profits, this bill was filed for an accounting and a declaration of the complainant's right to an equitable estate or interest in an undivided half of the tract and a conveyance thereof of the legal title.
The complainant's case cannot be sustained upon the theory of a resulting trust. In order that a trust result in his favor it must appear that at the time of purchase he paid his share of the purchase price, or bound himself by an absolute obligation to pay it. 3 Pom. Eq. Jur. § 1037; Krauth v. Thiele, 45 N.J. Eq. 407; Down v. Down, 80 N.J. Eq. 68; Phillips v. Phillips,81 N.J. Eq. 459; affirmed, 83 N.J. Eq. 345. He did neither. The Steenland company alone, by its bond secured by mortgage, incurred the obligation to pay the consideration. The complainant's guaranty of the bond and mortgage was a separate and independent contract with the holder to pay according to the tenor of the bond and mortgage in the event that the Steenland company failed to pay. It was collateral to, not a part of, the original obligation *Page 85 
of the Steenland company. 12 R.C.L. 1053; Perkins-Goodwin Co.
v. Hart, 83 N.J. Law 471. A trust may result in favor of one who obligates himself to pay the consideration price, but not to one who guarantees the obligation. The principle upon which this type of resulting trust rests limits the equity.
A trust does not result to the complainant because he and the Steenland company were equitable owners in common of the land by their joint acceptance of the option, and because he, in effect, conveyed his equitable estate to the Steenland company, by consenting to the conveyance by the Nordhoff company to it of the legal title, upon its promise to hold a moiety to his use. Had he held the legal title and conveyed it to the Steenland company upon parol trust to his use, no trust would have resulted, and his right of recovery of his equitable estate is no better than would be his right to recover his legal estate. In the DownCase, which expresses the views of the authorities on the subject in this state, it is held that, upon a conveyance of the legal estate to the use of the grantee, no trust results upon his promise to hold it to the use of the grantor, and that unless the promise is in writing it is not provable under the statute of frauds to establish an express trust, and this concise statement of the law is quoted from Fretz v. Roth, 70 N.J. Eq. 767:
"Where a use is declared by a deed operating under the statute of uses, no other use or trust not expressed in writing can be shown."
The action cannot be maintained upon the ground of a joint venture in the sale of real estate. The contract was not in writing. The point is decisively settled, so far as this court is concerned, by Vice-Chancellor Leaming in the recent case ofPartridge v. Cummings, 99 N.J. Eq. 14, in which he held that a parol contract of joint venture for speculation in real estate, in which one party engages to acquire in his own name a contract of purchase of certain land and to hold the contract of purchase and to cause operations under it in equal interest with the other party who advanced no money, was one that concerned an interest in land and to be within the fifth section of our statute of frauds, which *Page 86 
provides that no action shall be brought upon a contract concerning an interest in land unless the contract shall be in writing signed by the party to be charged; and he further held that equitable as well as legal interests in land were embraced within the statute. The vice-chancellor referred to the conflict of opinion as disclosed in the note in 18 A.L.R. 484, and adopted as sound in principle the doctrine of Mr. Justice Story in Smith v. Burham, 3 Sumn. 435, which followed in substance by Vice-Chancellor Pitney in Schultz v. Waldons, 60 N.J. Eq. 71.
The rule of the Partridge Case is limited in its scope to simple contracts of joint venture in the sale of lands; other attending circumstances may render the statute inapplicable, as the authorities show, but the fact that in the present case the complainant surrendered his option as part consideration for the joint venture, a feature absent in the cited case, is not sufficient to take it out of the statute.
The bill will be dismissed.