225 N.J. Super. 178 (1988)
542 A.2d 7
KARY D. PRESTEN, PLAINTIFF-RESPONDENT,
v.
KENNETH SAILER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 16, 1988.
Decided April 26, 1988.
*180 Before Judges PETRELLA, DREIER and BAIME.
Anthony J. Riposta attorney for appellant (Anthony J. Riposta on the brief).
Goldman, Carlet, Garrison, Bertoni & Klein, for respondent (Michael J. Zaretsky on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The issues presented in this case include the existence and enforceability of an oral agreement between two individuals to jointly purchase an ownership interest in a cooperative apartment. Implicated therein is the status of ownership of shares of a cooperative apartment as realty or personalty. The Chancery Division judge found that Kenneth Sailer and Kary D. Presten had entered into a partnership or joint venture for the purchase of the apartment in which the two men had been *181 living and that this agreement did not fall within the statute of frauds. Sailer now appeals.
Prior to the conversion of the building to a cooperative, the lease to the apartment in which the parties lived was solely in Sailer's name. Sailer had entered into the written lease for apartment 3F in Bridgeview Towers, Fort Lee in June 1982. He advertised in a newspaper to share the two-bedroom apartment. In December 1982 Presten orally subleased a share of the apartment for $250. At that time Sailer's monthly rental was $442. Each party occupied a separate bedroom and bath for over a period of three years and shared the use of the rest of the apartment, splitting utility costs.
The apartment complex was purchased by the Fort Lee Conversion Corporation in September 1984. Shortly thereafter Sailer and Presten became aware that the apartment building was converting to cooperative status and that shares in the cooperative would be offered to the tenants in the apartments.
In late 1984 Sailer told Presten that he was considering purchasing the shares entitling him to lease his apartment from the cooperative. Sailer received a prospectus from the Bridgeview Towers Cooperative in December 1985 or January 1986. He was offered the right of first refusal to purchase the cooperative shares and obtain the lease for his apartment at an insider's price of $55,800, which was projected to be about 60% to 70% lower than the market price. In order to exercise his right to purchase, Sailer had to pay a $1,000 subscription fee by March 1, 1986.
Without telling Presten, Sailer placed an advertisement on February 13, 1986 in The New York Times advising that his apartment was for sale for $115,000. Presten claimed that on February 19, 1986 Sailer sought an equal partnership with him to purchase the cooperative shares because Sailer could not obtain financing himself. According to Presten, Sailer asked "Do you want to be partners?" Presten then gave Sailer the $1,000 check, the proceeds of which were used by Sailer for the *182 subscription fee, i.e., the deposit to purchase the cooperative shares and the proprietary lease at the insider's price. According to Presten this money was a deposit on their purchase of the shares as partners and they both agreed to share all expenses of the purchase, including financing.
On the other hand, Sailer claimed that he merely agreed to "think about a possible partnership" and that no agreement to form a partnership was reached. Sailer testified that he did not need the $1,000, and that he had only told Presten he had inadequate liquid mutual funds to pay the subscription fee, claiming that the funds could have been liquidated within seven days. Sailer also testified that Presten gave him $1,000 so he would not accept an offer by any of the prospective buyers who responded to the newspaper advertisement.
After Presten gave Sailer the $1,000 he asked for a copy of the prospectus to show his attorney. He realized that Sailer had placed the February 13, 1986 newspaper advertisement when prospective buyers started to telephone or visit the apartment. According to Presten, he believed that Sailer had placed these advertisements only to determine the market value of the apartment.
Sailer told Presten shortly before March 1, 1986 that he had received a firm offer of $125,000 and had decided to take it. According to Sailer, Presten did not react to this announcement. Presten testified that about seven to ten days later Sailer said that he had reconsidered and wanted to stay and buy the apartment with him. Presten said he responded "okay." Presten testified that Sailer wanted to retain more than a 50% interest because his name was on the lease, although no offer of a percentage was made. Sailer denied any arrangement being made. Sailer said that while Presten wanted a written agreement, he did not because he was not ready to enter such an agreement.
In late March 1986 Sailer told Presten "we have no partnership" and increased Presten's rent from its then $279 amount to *183 $450 as of April 1, 1986. He also asked for a security deposit. However, he did not return the $1,000 advanced by Presten. Presten said he would think about the increase while he was away on a business trip. When he returned he contacted his attorney and thereafter confronted Sailer about the partnership agreement. Although Sailer attempted at that time to return the $1,000, Presten did not accept the money, but told Sailer to "think about it and get back to me." Sailer testified that he attempted to return the $1,000 when a prospective buyer approached him during early March. He also wanted to return the money because it showed (according to his deposition testimony) possible evidence of a partnership and because his attorney had instructed him to do so.
Presten then instituted suit. Sailer responded by giving Presten a "Notice to Quit" and a check for $1,013.33 which represented the return of the $1,000 and interest. Presten made utility and monthly rental payments which Sailer accepted up until the time of trial. Presten then vacated the apartment.
Sailer bought the cooperative shares in July 1986 and obtained a proprietary lease for the apartment in his name and that of his brother. Sailer conceded that his brother had an unofficial 20% interest in the stock. According to Sailer, he did not need his brother to co-sign on the mortgage, since at the time his approximate salary was $18,000 per year and his mortgage payment, taxes and maintenance amounted to only $877 a month. In October 1986 Sailer married, and his wife moved into the apartment with him and now shares expenses.
The Chancery judge found that although the lease had remained in Sailer's name, it had in effect been a co-tenancy prior to the conversion. He found a specific agreement between the parties to have Sailer exercise the cooperative conversion rights for the benefit of both of them, sharing in any profits and expenses. He also found that Sailer "attempted to use" Presten when he entered the agreement thus establishing misrepresentation. The judge found that although there had been *184 discussion about defendant's interest being slightly more than plaintiff's, these discussions had not resulted in any definite agreement. Hence he applied the presumption that the parties had an equal interest in the cooperative shares.
On this appeal Sailer contends that the cooperative form of ownership is an interest in real estate and that the alleged oral agreement between himself and Presten to purchase the cooperative shares as partners is unenforceable because it violates the statute of frauds. He also argues that even if it is assumed that the formation of a partnership made the statute of frauds inapplicable, there was no partnership in the first instance. Alternatively, Sailer argues that if the transfer of an interest in a cooperative apartment is more akin to the sale of securities, goods or personal property valued at more than $5,000 than to the sale of an interest in real estate, then the various Uniform Commercial Code (UCC) statute of frauds provisions apply. Finally, Sailer argues that if an equitable lien is to be imposed, it should be limited to the amount contributed by Presten toward the purchase price.

I
Although condominium ownership has been generally regulated by statute (see N.J.S.A. 46:8A-1 et seq.), the cooperative form of ownership has heretofore not been so regulated.[1] However, N.J.S.A. 46:8D-1 et seq. will apply to "all cooperatives created within this State after the effective date of this act [L. 1987, c. 381]."[2] Legal title to the real and personal *185 property of a cooperative complex or project is vested in a cooperative corporation, and individuals purchase shares of stock[3] enabling them to occupy a dwelling within the cooperative project under a proprietary lease. See Plaza Road Co-op, Inc. v. Finn, 201 N.J. Super. 174, 180 (App.Div. 1985); AMR Realty Co. v. State, 149 N.J. Super. 329, 334-335 (App.Div. 1977), app. dism. 153 N.J. Super. 84 (App.Div. 1977).
We thus consider whether the ownership of shares in a cooperative constitutes holding an "interest in" or "concerning" real estate so as to bring it within the ambit of the statute of frauds relating to realty in N.J.S.A. 25:1-5d. Whether the interest of the stockholder-tenant in a cooperative corporation is personal or real property has been the subject of much debate. Although other states have grappled with and resolved the issue in various contexts and for various purposes, New Jersey has not yet finalized the distinction between whether cooperative ownership entails personalty or realty. In Plaza Road Co-op., Inc. v. Finn, supra (201 N.J. Super. at 180), we quoted the Law Division to the effect that:
... a cooperative apartment association is a unique form of property ownership which does not fit into common law classifications. It is personalty for purposes of estate distribution; it is real estate for purposes of income tax deductions; and it is governed by corporate law concerning its internal management.
We concluded, however, that in the context of a summary dispossess action, the relationship between the association and *186 a cooperative shareholder is not that of landlord and tenant. Id. at 181.
New York seems to have had more experience with cooperative apartment developments than other states. See Smith, New Jersey Condominium Law, 8 (1985). New York treats contracts creating or conveying an interest in a cooperative apartment as within its broad statute of frauds governing realty. N.Y. General Obligations Law, § 5-703 (McKinney 1978);[4] see Moloney v. Weingarten, 118 A.D.2d 836, 836-37, 500 N.Y.S.2d 320, 321-322 (2d Dept. 1986), app. den., 69 N.Y.2d 608, 509 N.E.2d 358, 516 N.Y.S.2d 1023 (1987); Lebowitz v. Mingus, 100 A.D.2d 816, 817, 474 N.Y.S.2d 748, 749-750 (1st Dept. 1984); Meyer v. Nelson, 83 A.D.2d 422, 424-25, 445 N.Y.S.2d 436, 437 (1st Dept. 1981); Rosner v. 80 CPW Apts. Corp., 73 A.D.2d 39, 41-42, 424 N.Y.S.2d 723, 725 (1st Dept. 1980); Pollard v. Meyer, 61 A.D.2d 766, 766-67, 402 N.Y.S.2d 15, 16 (1st Dept. 1978); Sebel v. Williams, 88 Misc.2d 411, 413-14, 388 N.Y.S.2d 494, 496 (Civ.Ct. 1976); Frank v. Rubin, 59 Misc.2d 796, 797, 300 N.Y.S.2d 273, 274 (Sup.Ct. 1969).
Under federal securities laws cooperatives are treated more like realty, rather than as securities. See United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), rehg. den. 423 U.S. 884, 96 S.Ct. 157, 46 *187 L.Ed.2d 115 (1975). The stock associated with cooperative apartments has been found to lack the requisite common features of stock in the financial markets, and hence it is not subject to regulation through the securities laws. As the United States Supreme Court noted in United Housing Foundation, Inc. v. Forman, supra (428 U.S. at 851, 95 S.Ct. at 2060, 44 L.Ed.2d at 631-632), stock in a cooperative housing corporation lacks the most common feature of stock:
the right to receive `dividends contingent upon an apportionment of profits.' [citation omitted]. Nor do they possess the other characteristics traditionally associated with stock: they are not negotiable, they cannot be pledged or hypothecated, they confer no voting rights in proportion to the number of shares owned; and they cannot appreciate in value.
This court has previously held in AMR Realty Co. v. State, supra (149 N.J. Super. at 338), that shares in a cooperative housing corporation are not securities under the Uniform Securities Laws. Moreover, such shares are not "of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment." N.J.S.A. 12A:8-102(1)(a)(ii) (definition of "security").
The share in the cooperative corporation represents an intangible property right. Registrar & Transfer Co. v. Director, Div. of Taxation, 166 N.J. Super. 75, 80-81 (App.Div. 1979), certif. den. 81 N.J. 63 (1979). The certificate, however, considered tangible personal property, id. at 81, is not a "security" under the UCC, N.J.S.A. 12A:8-102(1).
By virtue of a specific statutory provision, stockholders in a cooperative housing corporation are entitled to a homestead rebate which is designed to benefit homeowners. N.J.S.A. 54:4-3.80. In the same vein New Jersey's Transfer Inheritance Tax treats such ownership as realty so that the tax does not apply to a surviving spouse who jointly owned a proprietary lease with the decedent. N.J.S.A. 54:34-1f. Thus, the same exception from tax which applies to real estate applies to a cooperative apartment. Likewise, under federal tax law a *188 cooperative housing corporation stockholder may deduct an allocable share of real estate taxes and mortgage interest on the federal income tax return. See 26 U.S.C.A. § 216 (West Supp. 1987). Moreover, the banking law was amended in 1977 to allow loans to be made by financial institutions to finance the purchase of ownership interests in stock certificates for cooperative real estate. N.J.S.A. 17:2-6d. These loans were expressly authorized on the security of the assignment of the stock and the proprietary lease and might not previously have been considered eligible for real estate loans under N.J.S.A. 17:2-6a.[5] Similar loans for the purchase of real estate had been expressly permissible before the amendment. See N.J.S.A. 17:2-6a.
The proprietary lease grants an interest in real property. Even prior to the amendment of N.J.S.A. 46:15-5(1)(a) by L. 1987, c. 381, the proprietary lease was recordable under N.J.S.A. 46:16-1 ("leases for life or any term not less than two years"), as was an assignment of such a lease, insofar as it was a conditional assignment, i.e., leasehold mortgage, necessary for the perfection of a creditor's interest in the lease aspect of the arrangement. Cf. N.J.S.A. 46:9-8.1a and 46:10B-1(a) (defining "mortgage loan" as a loan "secured by an interest in real property," irrespective of the interest being a fee or a leasehold interest). Some lending institutions view security agreements for loans to finance cooperative housing interest purchases as mortgages. See 4B Powell, Real Property (rev'd ed. 1987), para. 633.51[3] at 1027-1033. Therefore, in this hybrid setting, laws governing both real and personal property are applicable to different aspects of the transaction involving cooperative apartment shares. See supra n. 4. Significantly, under N.J. *189 S.A. 46:15-5(1)(a), as amended by L. 1987, c. 381, § 13, the "proprietary lease of a cooperative unit and any assignment" thereof will be treated as a freehold for purposes of the act. The transfer document will be recordable.[6] Although this act is not applicable in the dispute between the parties here, a discussion of cooperative apartments must acknowledge the new statute.
We recognize, as has the Legislature, that cooperative ownership is hybrid and sui generis. L. 1987, c. 381, § 2. Nevertheless, it appears that even prior to L. 1987, c. 381, our Legislature tended to accept the characterization of cooperative housing interests more as realty rather than as personalty.[7] See N.J.S.A. 46:8D-2 and N.J.S.A. 46:15-5(1)(a) as amended by L. 1987, c. 381. Moreover, a tenant shareholder generally perceives himself as a homeowner. Note, Legal Characterization of the Individual's Interest in a Cooperative Apartment: Realty or Personalty?, 73 Colum.L.Rev. 250, 260 (1973). Cooperative housing interests are also generally considered by the public as representing a proprietary interest in real estate. Cf. N.J.S.A. 46:8D-2 and Bluvias v. Winfield Mutual Housing Corporation, 224 N.J. Super. 515, 526 (App.Div. 1988) (upholding right *190 of first refusal of stock ownership in cooperatives). Indeed, the newly adopted "Cooperative Recording Act of New Jersey," L. 1987, c. 381, effective May 7, 1988, states in Section 13(1)(a) under the definition of "Deed":
`Deed' means a written instrument entitled to be recorded in the office of a county recording officer which purports to convey or transfer title to a freehold interest in any lands, tenements or other realty in this State by way of grant or bargain and sale thereof from the named grantor to the named grantee. A leasehold interest for 99 years or more or a proprietary lease of a cooperative unit and any assignment of a proprietary lease of a cooperative unit, shall be treated as a `freehold' for the purpose of this act.... [N.J.S.A. 46:15-5(1)(a)].
We conclude, despite conflicting past authority and the fact that cooperative housing interests are hybrid or unique, that cooperatives are more properly characterized as realty under the various legislative enactments in this State without regard to the recently enacted "Cooperative Recording Act" which gives further support to our determination.

II
The next issue is whether the New Jersey statute of frauds relating to realty applies to an agreement between purchasers (as contrasted with an agreement between seller and purchaser) to acquire an interest in cooperative housing, and if it does, what effect does it have on the dealings between the parties. Our statute of frauds provides with respect to real estate that:
No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
* * * * * * * *
d. A contract for sale of real estate, or any interest in or concerning the same; .... [N.J.S.A. 25:1-5d].
The Chancery judge stated in rather broad and vague terms, without making a specific finding, that Presten and Sailer had formed either a partnership or joint venture to purchase the cooperative apartment. Presten argued that the statute of *191 frauds should not apply to the transaction here because the partnership did not "contemplate and did not provide for the transfer of specific land from one party to another." Moreover, he asserts that the agreement was to acquire investment property. Presten relies on Ruta v. Werner, 1 N.J. Super. 455 (Ch.Div. 1948), and Chew v. Markheim, 125 N.J.L. 595 (Sup.Ct. 1941), to buttress his argument that an oral agreement to form a partnership for the division of profits derived from the sale of land need not be in writing.
Sailer argues on the other hand that the statute of frauds should apply because he and Presten orally agreed to purchase the cooperative shares as joint tenants[8] and not as partners under the Uniform Partnership Law, N.J.S.A. 42:1-1 et seq.
A partnership need not have been formed under N.J.S.A. 42:1-1 et seq. to allow a sharing in the profits of a business, see N.J.S.A. 42:1-6, or for there to have been a contract between the parties to share in the purchase and ownership of the cooperative shares. But the mere existence of a joint tenancy or tenancy in common does not establish a partnership. N.J.S.A. 42:1-7. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. 42:1-6. See Kozlowski v. Kozlowski, 164 N.J. Super. 162, 171 (App.Div. 1978), aff'd 80 N.J. 378 (1979) (elements required to establish partnership, e.g. showing of profits and losses); Zimmerer v. Clayton, 7 N.J. Tax 15, 22 (Tax Ct. 1984) ("partnership" describes a legal entity). Moreover, while a joint venture is virtually identical to a partnership, its objective as a business venture is more limited. See Grober v. Kahn, 47 N.J. 135, 147 (1966); Clemens v. O'Brien, 85 N.J. Super. 404, 414 (App.Div. 1964) (joint venture is for commercial or profit-making *192 purposes); Wittner v. Metger, 72 N.J. Super. 438, 444 (App.Div. 1962), certif. den. 37 N.J. 228 (1962).
Here, according to the trial judge's findings, the parties merely agreed to act together to subscribe for the purchase of shares in a cooperative housing corporation at the insider's price. The use of the term "partnership" as so used does not precisely correlate with the term's legal significance, but rather refers generally to a vernacular use. The record reveals that although Sailer placed advertisements seeking to either determine the cooperative apartment's potential market price or to eventually sell it, both he and Presten were interested in subscribing for and purchasing the shares entitling them to the proprietary interest in the cooperative apartment after conversion in order to live in it. The argument in respondent's brief suggesting sale and realization of profit as the main purpose of the contemplated purchase is not supported by the record. Of course, any purchase of real estate can have profit as its underlying motive, but here the trial judge found that the parties primarily intended to share title in the proprietary lease, not the profits resulting from its sale.
Unlike the facts in this case, Ruta v. Werner, supra (1 N.J. Super. at 455), and Chew v. Markheim, supra (125 N.J.L. at 595), did not involve agreements to purchase realty, thus forming a tenancy in common or joint tenancy. Rather, they involved oral agreements to form a partnership for the division of profits from the development or sale of land.
In Chew v. Markheim, supra (125 N.J.L. at 596) (relied on by the Chancery Division in Ruta v. Werner, supra (1 N.J. Super. at 455)), the court, in holding enforceable an oral contract for the division of profits from the sale of land, stated:
The title to the property was in nowise involved. Nor did the contract concern an interest in land as defined in the statute of frauds, R.S. 25:1-5. It was simply for the division of profits derived from the sale of land. [125 N.J.L. at 596].
*193 Other cases, however, have held that an oral contract to purchase land as a joint venture for the joint benefit of the parties is within the purview of the statute of frauds. Silberman v. Angert, 101 N.J. Eq. 477, 478 (Ch. 1927); Grant v. Steenland Constr. Co. 99 N.J. Eq. 82, 85-86 (Ch. 1926), aff'd 100 N.J. Eq. 566 (E. & A. 1926); Partridge v. Cummings, 99 N.J. Eq. 14, 17 (Ch. 1926); Schultz v. Waldons, 60 N.J. Eq. 71, 79 (Ch. 1900). See DeMarco v. Estlow, 18 N.J. Super. 30, 34-35 (Ch. 1952), aff'd 21 N.J. Super. 356 (App.Div. 1952).
These cases, however, are distinguishable from those involving the division of profits from the sale of land which have been held not within the statute of frauds because the transfer of title to real property was involved. As stated in Partridge v. Cummings, supra (99 N.J. Eq. at 17):
While ultimate profits necessarily was the primary object of the joint enterprise, equality of interest in the equitable title ... was a distinctive feature of [the] parol agreement.
There is no reason to distinguish cases involving joint ventures where the primary object of the joint enterprise was to acquire title from what occurred in this case because in either situation there is "a contract or sale of real estate, or any interest in or concerning the same." N.J.S.A. 25:1-5(d). As noted in Orrok v. Parmigiani, 32 N.J. Super. 70, 75 (App.Div. 1954):
Although the term `interest in' used in the statute is broad enough to include any right, title or estate in, or lien on, real estate, it does not extend the statute to agreements which, although affecting lands, do not contemplate the transfer of any title, ownership or possession....
Moreover, it has been stated that literal interpretation and construction of the terms "concerning real estate" is not to be employed.
The effect of this construction would be to render the statute of frauds applicable to every oral agreement which in any manner relates to real property, even though no transfer of any interest whatsoever might be contemplated thereby. [Ibid. (quoting Carter v. McCall, 193 S.C. 456, 8 S.E.2d 844, 846-847 (1940))].
However, an oral contract between two parties to enter into the purchase of real estate, not as partners but as joint *194 tenants or tenants in common, is unenforceable due to the statute of frauds. See DeMarco v. Estlow, supra (18 N.J.Super. 30); Weisner v. Benenson, 275 A.D. 324, 89 N.Y.S.2d 331 (1949), aff'd 300 N.Y. 669, 91 N.E.2d 325 (1950), Rizika v. Kowalsky, 207 Misc. 254, 259, 138 N.Y.S.2d 711, 715 (Sup.Ct. 1954), aff'd 285 A.D. 1009, 139 N.Y.S.2d 299 (4th Dept. 1955); Statute of Frauds, 72 Am.Jur.2d § 72 at 624-625 (1974).
Insofar as a cooperative has real estate aspects, and the proprietary lease gives it such aspects, the statute of frauds provision relating to realty applies. The Chancery Division judge was thus incorrect in determining that the sale of the shares in a cooperative housing corporation involves only personalty. Accordingly, the sale of cooperative housing interests falls within the statute of frauds provision with respect to sales of realty, N.J.S.A. 25:1-5d. See also N.J.S.A. 46:8D-11. We conclude that the agreement here did involve an interest in realty and violated the statute of frauds because it contemplated the transfer of title.
We find insufficient basis in the record to remove this case from the bar of the statute of frauds. The trial judge found a breach of an oral agreement. That breach and the advancement of $1,000 is not sufficient to conclude that adequate part performance existed. Part payment alone is not sufficient part performance to take the case out of the statute of frauds. Cauco v. Galante, 6 N.J. 128, 137 (1951). The rationale underlying this rule is that while the payment of money may be considered partial performance, the statute of frauds will not be disregarded if the party seeking enforcement of the contract can be restored to his former position by restitution without suffering a significant hardship. See Cooper v. Colson, 66 N.J. Eq. 328, 331-332 (E. & A. 1903); Kufta v. Hughson, 46 N.J. Super. 222, 228 (Ch.Div. 1957); Richman v. Richman, 117 N.J. Eq. 226, 230 (Ch.Div. 1934); Corbin, Contracts *195 § 431 at 480 (1950); Restatement, Contracts 2d, § 129 at 321 (1981). Such restitution can readily be made here.
Mere breach of an oral promise has been held not to be a sufficient basis to impose a constructive trust. Blaine v. Krysowaty, 135 N.J. Eq. 355, 358 (Ch. 1944); Brown v. Murray, 94 N.J. Eq. 125, 127 (Ch. 1922); Corbin, supra (§ 401 at 373). The complaint in the instant matter was essentially a contract claim seeking injunctive relief. The issue of constructive trust was not pleaded or referred to in the pretrial order which did refer to "equitable remedy." In any event, the record below does not provide a sufficient basis to support imposition of a constructive trust. D'Ippolito v. Castoro, 51 N.J. 584, 588-589 (1968). The necessary ingredients to establish a constructive trust are lacking. See id. at 589. As noted, a breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust. Otherwise, a constructive trust might be available whenever there was a breach of an oral agreement.
Nevertheless, Presten is entitled to the return of the $1,000 he advanced, plus interest. And, as Sailer argues, any equitable lien which might have been imposed would be limited to that sum.
In light of our determination that agreements to buy or sell cooperative interests are to be considered as affecting an interest in realty, whether the agreement is between the seller and purchaser of shares or only between two or more potential purchasers, we need not further address Sailer's alternative arguments concerning the applicability of the statute of frauds provisions in the New Jersey UCC governing either investment securities, N.J.S.A. 12A:8-319, goods, N.J.S.A. 12A:2-201, or personal property valued over $5,000, N.J.S.A. 12A:1-206.
The Chancery Division's judgment of February 27, 1987 is reversed in accordance herewith.
NOTES
[1] N.J.S.A. 2A:18-61.1 and 61.2 deal with the conversion of rental housing into cooperative ownership in the anti-eviction law context.
[2] "The Cooperative Recording Act of New Jersey," L. 1987, c. 381, adopted January 8, 1988, effective 120 days after enactment (May 7, 1988), defines a "cooperative":

`Cooperative' means any system of land ownership and possession in which the fee title to the land and structure is owned by a corporation or other legal entity in which the shareholders or other coowners each also have a long term proprietary lease or other long term arrangement of exclusive possession for a specific unit of occupancy space located within the same structure. [N.J.S.A. 46:8D-3f].
See N.J.S.A. 2A:18-61.7c (definition of "cooperative" under anti-eviction law). See also N.J.S.A. 46:8D-3k (definition of "proprietary lease" under Cooperative Recording Act).
[3] Although these shares are termed stock, it appears this characterization is used as a matter of tradition and convenience. United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848 n. 13, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621, 630 n. 13 (1975), rehg. den. 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975). See discussion, infra.
[4] However, New York has also held cooperative interests to be personalty in other areas. See Friedman v. Sommer, 63 N.Y.2d 788, 789-90, 471 N.E.2d 139, 140, 481 N.Y.S.2d 326, 327 (1984) (contract for sale of cooperative apartment held as sale of securities governed by Art. 2 of UCC); State Tax Commission v. Shor, 43 N.Y.2d 151, 157-58, 371 N.E.2d 523, 526-527, 400 N.Y.S.2d 805, 808-809 (1977) (judgment debtor's interest in cooperative stock not real property but personalty under statute governing priority of liens on real property); Matter of Carmer, 111 A.D.2d 171, 172-73, 488 N.Y.S.2d 801, 802-803 (2d Dept. 1985) (cooperative shares considered as personalty for estate distribution); Silverman v. Alcoa Plaza Associates, 37 A.D.2d 166, 172, 323 N.Y.S.2d 39, 45 (1st Dept. 1971) (shares of cooperative stock personalty under UCC Art. 2); Suddin v. Lynbrook Gardens Co., 127 Misc.2d 406, 408-09, 486 N.Y.S.2d 155, 157 (Sup.Ct. 1985) (cooperative interest treated as personalty for venue purposes).
[5] Prior to the effective date of L. 1987, c. 381, such a transaction did not require recordation as do mortgages on real property. See, e.g., N.J.S.A. 46:16-1(b). A possessory security interest in cooperative housing stock, however, might have been subject to filing under the UCC, N.J.S.A. 12A:9-302(1) and 305. See 4B Powell, supra (para. 633.51[3] at 1033-1036); State Tax Commission v. Shor, supra (43 N.Y.2d at 157, 371 N.E.2d at 526, 400 N.Y.S.2d at 808).
[6] Indeed, as a result of L. 1987, c. 381 a realty transfer fee (N.J.S.A. 46:15-5 et seq.) and "The Real Property Notice of Settlement Act" (N.J.S.A. 46:16A-1 et seq.) will be applicable to the recording of cooperative transfer documents in the same manner as deeds.
[7] E.g., N.J.S.A. 54:4-3.80a provides a homestead rebate to owners of residential realty and for resident shareholders in a cooperative housing corporation. This statute was amended to include cooperative interests by L. 1977, c. 241, § 1 and c. 242, § 6. N.J.S.A. 54:34-1f was amended by L. 1979, c. 413, § 1, to exclude surviving spouses who jointly owned stock in a cooperative housing corporation from the transfer inheritance tax to conform with the exception as it applies to surviving spouses who jointly owned realty. N.J.S.A. 17:2-6d was amended by L. 1977, c. 94, § 1 to permit financial institutions to provide loans to finance purchase of cooperative interests. But see Uniform Common Interest Ownership Act, § 1-105(a) and Model Real Estate Cooperative Act, § 1-105(a) (unless declaration states otherwise, owner's interest is personal property subject to state homestead exception).
[8] It is likely that they would have intended to be tenants in common although the judge in his decision mentioned "joint tenancy" as a possibility, without making a finding or deciding the issue.