[No. 45247-9-I.   Division One.   November 6, 2000.]

DONALD R. FIRTH, ET AL., *Respondents*, v. HEFU LU, ET AL., *Appellants*.

*Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*); and *Ken Longley*, for appellants.

*Jeffrey M. Eustis* (of *Law Offices of J. Richard Aramburu*), for respondents.

BECKER, A.C.J. — Although the purchaser of a cooperative apartment unit receives shares of stock rather than a deed, the interest transferred is an interest in real property because the shares of stock do not have the attributes of true securities and are necessarily accompanied by a proprietary lease. A contract to purchase real property must contain a legal description of the property to comply with the statute of frauds. In the present case, the contract to purchase a cooperative unit lacked a legal description, and is therefore unenforceable. We reverse and remand for an

order dismissing the purchaser's suit for specific performance.

At issue is an order enforcing, on summary judgment, an agreement to purchase a co-op unit despite the absence of a legal description of the property. This court reviews summary judgment de novo by engaging in the same inquiry as the trial court. *Brower v. State*, 137 Wn.2d 44, 52, 969 P.2d 42 (1998), *cert. denied*, 526 U.S. 1088 (1999). Summary judgment is proper as a matter of law when no genuine issue exists as to any material fact. CR 56(c).

The material facts are undisputed. Maryland Apartments, Inc., is a corporation founded in 1948. The corporation owns a 19-unit apartment building in the Capitol Hill neighborhood of Seattle for the purpose of providing housing to its shareholders. Donald Firth, who uses a wheelchair, lived for 20 years in one of the two apartments on the ground floor. Firth and his wife became interested in moving to Apartment 2, the other ground floor apartment, because it is larger. Firth negotiated an agreement to purchase Apartment 2 from its occupants, Hefu Lu and his wife, Qian Sun. Lu put the agreement in writing in April 1997 and both couples signed it:

> Barbara A. Palecek and Donald R. Firth agree to purchase Apartment 2 (626 13th Avenue East) from Hefu (Max) Lu and Qian (Jeanette) Sun for $180,000. Possession to take place on October 15, 1997 after exchange of remainder of purchase price and receipt of stock certificate.
>
> Enclosed are checks for $500 given in earnest.

A couple of months later, Firth paid an additional $1,500 in earnest money after learning that Lu's wife was reluctant to sell. Lu did not cash the earnest money checks, now totaling $2,000.

Before the date set for Firth to take possession, a disagreement surfaced between Lu and his wife about whether they should sell their unit for the agreed-upon price. When October came, Lu's wife had convinced him they should not

sell unless the price was increased by $50,000. Lu asked Firth to extend the closing date for a month, but he did not communicate any misgivings about the price, stating only that his new apartment was not ready to be occupied. Firth verbally agreed. Later, Firth verbally agreed to extend the closing until the end of the year.

In January 1998, Lu informed Firth that he was no longer willing to sell his interest for $180,000. He said he wanted to increase the purchase price to $230,000. This increase was not acceptable to Firth. Firth sued Lu for breach of contract and sought an order of specific performance.

Lu brought a CR 12(b)(6) motion to dismiss the complaint on the basis that the contract was unenforceable under the statute of frauds because it lacked a legal description of the property. The court denied Lu's motion. Firth then moved for summary judgment. The court granted the motion and ordered specific performance by Lu. The court's order, dated August 27, 1999, states:

> Judgment shall be entered in favor of plaintiffs finding the defendants Hefu Lu and Qian Sun to have breached the agreement to convey their interests associated with apartment 2 in Maryland Apts., Inc. and for specific performance directing Hefu Lu and Qian Sun to perform as provided for under the agreement to purchase dated April 18, 1997 upon the tendering of purchase price by Donald Firth and Barbara Palecek to occur within 60 days of the entry of judgment.

Upon entry of the order, Firth paid Lu $180,000 and took possession of Apartment 2. Lu deposited the funds into the court registry and filed this appeal. He assigns error to the court's decree of specific performance and also to its order denying his motion to dismiss.

The pivotal issue is whether the conveyance of an interest in a cooperative housing unit is a transfer of an interest in real property. If so, it is subject to the statute of frauds for real estate transactions, and must contain a legal description to be enforceable.

■ The special statute of frauds relating to real property provides that every "conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . . ." RCW 64.04.010[1] Our courts have repeatedly held that "in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony." *Martinson v. Cruikshank*, 3 Wn.2d 565, 567, 101 P.2d 604 (1940). In *Martin v. Seigel*, 35 Wn.2d 223, 229, 212 P.2d 107 (1949), the Washington Supreme Court clarified the requirements of the statute:

> In the interests of continuity and clarity of the law of this state with respect to legal descriptions, we hereby hold that every contract or agreement involving a sale or conveyance of platted real property must contain, in addition to the other requirements of the statute of frauds, the description of such property by the correct lot number(s), block number, addition, city, county, and state.

Recently, the court was asked to replace *Martin*'s strict requirement of a legal description with a rule that would permit the use of a street address to describe the property. The court declined to overrule *Martin*. *Key Design Inc. v. Moser*, 138 Wn.2d 875, 983 P.2d 653 (1999).

■ Whether a transfer of an interest in a cooperative apartment is subject to the statute of frauds is a question of first impression in Washington. The only Washington case examining the cooperative structure is *State ex rel. Leavell v. Nelson*, 63 Wn.2d 299, 387 P.2d 82 (1963). *Leavell* involves the issue of voting rights for nonresident shareholders, and does not get at the nature of the property interest acquired by the purchaser of a unit.

---

[1] The general statute of frauds, which is not at issue, applies to agreements incapable of being performed within one year, promises to answer for the debts of another, promises upon consideration of marriage, promises by an executor to pay damages out of his own estate and agreements to employ an agent to purchase or sell real estate for compensation or commission. RCW 19.36.010.

Cooperatives were introduced in this country after World War I. They were precursors to condominiums, which came into being in the 1960s. 4 THOMPSON ON REAL PROPERTY § 36.05 (David A. Thomas ed., 1994). The purpose of both property structures is to secure the benefits of individual ownership together with shared responsibilities. THOMPSON § 36.01. The difference between the two forms is that condominium purchasers acquire a fee interest in their individual unit, whereas in a cooperative, a corporation or other such entity owns the entire project. THOMPSON § 36.04(b). A co-op purchaser receives stock or similar evidence of ownership. *Leavell*, 63 Wn.2d at 300; THOMPSON § 36.04(b). Typically, shareholder status entitles a cooperative resident to hold a proprietary lease to a particular unit. *Leavell*, 63 Wn.2d at 300; THOMPSON § 36.06(a). A proprietary lease is an agreement between a shareholder and the cooperative association through which the shareholder is "entitled to the exclusive possession of a unit in a cooperative." 15A AM. JUR. 2D *Condominiums* § 62 (2000). Ownership of stock and the interest in the lease are interdependent. THOMPSON § 36.04(b).

The organization of the Maryland Apartments follows the usual model. Each shareholder owns a block of shares corresponding to a residence unit. The number of shares assigned to each unit is fixed in the bylaws. The number of shares assigned to each unit varies, ranging from 4,250 to 5,500 shares per unit. According to the bylaws, each shareholder has a "right to a proprietary lease for the apartment associated with the block of shares owned by each shareholder." A shareholder may not sell, transfer, pledge or encumber shares without the approval of the corporation. A block of shares corresponding to a unit must be sold in its entirety. Each shareholder is entitled to one vote in the shareholder meetings, regardless of the number of shares owned.

Because the corporate entity owns the real property, a conveyance of an interest in cooperative housing occurs by

means of a transfer of stock. Firth would have received a stock certificate rather than a title or deed upon concluding his purchase of Apartment 2. He therefore contends that his contract with Lu is for the transfer of personal property, not for the transfer of an interest in real estate.

New York and New Jersey regard an interest in a cooperative housing unit as an interest in real property, and their courts have consistently held that an agreement to convey an interest in a cooperative apartment is unenforceable without a writing that satisfies the real estate statute of frauds. *See Pollard v. Meyer*, 61 A.D.2d 766, 402 N.Y.S.2d 15 (1978); *Moloney v. Weingarten*, 118 A.D.2d 836, 500 N.Y.S.2d 320 (1986); *Presten v. Sailer*, 225 N.J. Super. 178, 542 A.2d 7 (1988).

In *Presten*, the New Jersey court rejected an attempt to characterize the transaction as a sale of stock. The court was influenced, in part, by the United States Supreme Court's decision that federal securities law does not apply to cooperative shares. *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975). Cooperative shares are not securities because they lack the "most common feature of stock"—the right to receive a share of profits as dividends. *Forman*, 421 U.S. at 851. The essential attribute of a security is an investment "premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman*, 421 U.S. at 852. A purchase motivated by a desire to use or consume the item—such as when the purchaser occupies or uses land—is not such an investment. *Forman*, 421 U.S. at 852-53.

The New Jersey court also noted that federal tax law treats ownership of cooperative stock like ownership of real property, in that a cooperative shareholder may deduct an allocable share of real estate tax and mortgage interest on his federal tax return. *Presten*, 542 A.2d at 11-12. Finally, the court found that treating cooperative stock ownership as the ownership of real property rather than personal property comports with the public perception of and pur-

pose behind the cooperative structure. *Presten*, 542 A.2d at 12-13.

The observations of the New Jersey court in *Presten* are equally apt with respect to the Maryland Apartments. The shares in the Maryland Apartments lack the basic characteristics of securities. They are not regulated by securities law, or traded on a securities market. There is no right to dividends. The shares are not freely alienable, the blocks may not be split up, and each shareholder has one vote, regardless of the number of shares owned.

In addition, the shares assigned to each unit in the Maryland Apartments are expressly tied to the lease associated with the unit. A person must own the requisite number of shares to be entitled to enter into a proprietary lease with the corporation. The bylaws provide that the board, upon approving a transfer of shares, is to execute the share certificate simultaneously with the proprietary lease.

The agreement between Firth and Lu reinforces the *Presten* court's view that the practical reality of a sale of a cooperative unit is a transfer of an interest in real property. The agreement states that the buyers "agree to purchase Apartment 2." The transfer of stock was incidental; the real import of the transaction, as perceived by the parties, was the transfer of the right to possess and occupy the apartment unit.

Firth has not shown why Washington law should not follow the path of New York and New Jersey on this issue. The Washington cases he cites do not point in a different direction. Our Supreme Court has held that a transfer of stock in a corporation is still a transfer of personal property even though the corporation's sole asset is real estate. *Bell v. Hegewald*, 95 Wn.2d 686, 692, 628 P.2d 1305 (1981). But *Bell*'s holding is entirely consistent with the New York and New Jersey cases; it is the nature of the rights the purchaser receives, not the classification of the corporation's assets, that determines whether the shares purchased represent an interest in real property. Our Supreme Court has also held that the statute of frauds does not apply to an

agreement to form a partnership to purchase and develop real estate. *Malnar v. Carlson*, 128 Wn.2d 521, 533, 910 P.2d 455 (1996). But Lu and Firth did not agree to form a partnership or start a business. The sole purpose of their agreement was to convey Lu's interest in Apartment 2 to Firth.

The purpose behind the real estate statute of frauds is the prevention of fraud arising from the uncertainty inherent in oral contractual undertakings. *Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971). That concern is no less present in the transfer of the right to possess a cooperative apartment unit than it would be in the transfer of a lease. *See Conaway v. Time Oil Co.*, 34 Wn.2d 884, 893, 210 P.2d 1012 (1949) (lease must comply with the requirements of the statute of frauds).

We conclude that a transfer of a cooperative housing unit is a transfer of an interest in real property. As such, it is governed by the statute of frauds. This agreement to purchase designates the real estate as "Apartment 2 (626 13th Avenue East)." This is not an adequate legal description sufficiently definite to locate the property without recourse to oral testimony.

Firth argues that a decision to make transfers of cooperative units subject to the statute of frauds should apply only to purchase and sale agreements entered into in the future. But it is unusual for a court to announce a decisional rule for future transactions without applying it in the case at hand. The rare instances of announcing a new rule prospectively occur when a court is overruling a prior decision, and then only where it is likely that particular persons had settled their affairs in justifiable reliance upon the overruled decision. *See, e.g., Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 567 P.2d 631 (1977) (holding prospectively that a vendee's interest in a real estate contract constitutes "real estate" within the meaning of the judgment lien statute); *State ex rel. Fin. Comm. v. Martin*, 62 Wn.2d 645, 384 P.2d 833 (1963) (overruling of former interpretation of a constitutional debt limitation made

prospectively so as not to invalidate existing municipal bonds). The case at hand is not such a case. We are not overruling a prior decision; and our decision, while it resolves an issue of first impression in Washington, is predictably consistent with decisions in other jurisdictions.

In short, the real estate statute of frauds applies to the agreement between Firth and Lu. Nevertheless, as Firth points out, situations do arise in which courts will grant relief from the statute of frauds. The reason often expressed in such decisions is that courts should not apply a statute of frauds "in such a manner as to promote and encourage fraud." *See, e.g., Miller*, 78 Wn.2d at 828. Firth argues that the statute of frauds should not apply in this cause because Lu acted deceptively in seeking extensions of the closing date when he had already decided not to honor the price stated in the written agreement.

But, as a more thorough reading of *Miller* shows, a party seeking relief from the statute of frauds must do more than point to misleading conduct by the other party. The purpose of the statute is not the prevention of fraud or deception in general, but the prevention of fraud "arising from *uncertainty* inherent in oral contractual undertakings." *Miller*, 78 Wn.2d at 829. In this case it is the absence of a legal description of the property that creates uncertainty about the existence of a contract. A party to an agreement not containing a legal description of the property it purportedly promises to convey is entitled to view that agreement as tentative. *Key Design*, 138 Wn.2d at 887. Before enforcing such an agreement, a court must first assess whether there is sufficient part performance to leave no doubt as to the existence of a contract. *See Miller*, 78 Wn.2d at 829. An agreement that appears on its face to be tentative because the legal description is inadequate may yet be enforced, but only if there is evidence of part performance sufficient to show that the parties intended it to be binding. A sufficient showing of part performance will exempt an instrument containing an inadequate descrip-

tion from the statute of frauds. *Berg v. Ting*, 125 Wn.2d 544, 555, 886 P.2d 564 (1995).

To determine whether there has been part performance of an agreement, courts examine three factors: (1) delivery and assumption of actual and exclusive possession, (2) payment or tender of consideration, and (3) the making of permanent, substantial and valuable improvements referable to the contract. *Kruse v. Hemp*, 121 Wn.2d 715, 724-25, 853 P.2d 1373 (1993). Firth did not move into the new unit before a scheduled closing, and he did not make improvements to it. The extent of his performance was his tender of $2,000 in earnest money. His tender of the earnest money does not take the agreement outside of the statute of frauds because consideration alone is insufficient evidence of part performance. *Berg v. Ting*, 125 Wn.2d at 558 (performance by one party, by withdrawing opposition to a subdivision proposal in exchange for an easement, was insufficient to bring certainty to the description of land in an attempted grant of easement); *Richardson v. Taylor Land & Livestock Co.*, 25 Wn.2d 518, 530, 171 P.2d 703 (1946). Firth has not supplied sufficient evidence of part performance.

Firth cites *In re Estate of Nelson*, 85 Wn.2d 602, 610-11, 537 P.2d 765 (1975), in which the court considered a property settlement agreement reached in verbal discussions by parties to a dissolution proceeding. The agreement was subject to the statute of frauds because it included an agreement to quitclaim an interest in real property. One of the parties refused to sign the written settlement agreement that her own attorney drafted, but the court nevertheless enforced it, holding that the other party's conduct in signing both the agreement and the quitclaim deed was sufficient evidence of part performance to take the agreement out of the statute of frauds. Firth contends he similarly relied in good faith upon the agreement prepared by Lu.

*Estate of Nelson* was an application of promissory estoppel to an oral promise to make a memorandum. *Klinke v. Famous Recipe Fried Chicken Inc.*, 94 Wn.2d 255, 259-60,

616 P.2d 644 (1980). The nonsigning party implied her own endorsement of the verbal agreement by accepting the other party's performance. Unlike *Estate of Nelson*, here there is no evidence that Lu accepted the benefits of performance by Firth in a manner so definitive as to establish that their alleged agreement was binding rather than tentative. If the simple expedient of tendering earnest money or other consideration was enough to exempt an agreement from the statute of frauds, one party would be able to transform a tentative and nonbinding agreement into an enforceable one unilaterally, a result at odds with basic contract law. As Firth has not shown detrimental reliance, promissory estoppel is unavailable as a theory to support the decree of specific performance. *See Klinke*, 94 Wn.2d at 259 n.2.

In summary, an agreement to transfer a cooperative unit is subject to the statute of frauds. If it lacks a legal description of the property and there has not been part performance, the agreement is unenforceable. The order decreeing specific performance by Lu is therefore reversed.

■■ Lu also appeals from the order denying his motion to dismiss Firth's suit. Firth responded to Lu's CR 12(b)(6) motion with supporting documentation pertaining to matters outside the pleadings. Thus, we treat Lu's motion as one for summary judgment. *Mueller v. Miller*, 82 Wn. App. 236, 246, 917 P.2d 604 (1996). Although the reversal of an order granting summary judgment to one party does not necessarily mean that the other party's motion for summary judgment must be granted, that can be an appropriate remedy in a case where the two motions take diametrically opposite positions on the dispositive legal issue, and raise no issues of fact. *See Weden v. San Juan County*, 135 Wn.2d 678, 709-10, 958 P.2d 273 (1998). In this case, the material facts have been fully developed and are not in dispute. The function of summary judgment proceedings is to avoid a useless trial. Because it does not appear that further litigation has any potential for establishing a basis upon which to enforce the agreement, we reverse the order

denying Lu's motion to dismiss, and remand for entry of an order of dismissal.

Reversed.

COLEMAN and WEBSTER, JJ., concur.

Reconsideration denied December 6, 2000.

Review granted at 143 Wn.2d 1019 (2001).